**Marie A. GREENE**

v.

**Casper WEINBERGER, Secretary of Health, Education and Welfare.**

**Civ. A. No. 74–1606.**

United States District Court,
E. D. Pennsylvania.

March 26, 1975.

Jack E. Feinberg, Philadelphia, Pa., for plaintiff.

Robert S. Forster, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

We have before us cross-motions for summary judgment on an appeal from the decision of the Secretary of Health, Education, and Welfare denying claimant disability insurance benefits under §§ 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, as amended, after April 11, 1973.

For the reasons set forth below, we hereby grant the motion of plaintiff and deny the motion of defendant.

Claimant initially filed for disability benefits on September 20, 1972, claiming that injuries sustained to her pelvis, back, and legs in an automobile accident on March 14, 1972, had rendered her permanently disabled from the date of the accident. The Secretary denied her claim on December 7, 1972. On March 8, 1973, claimant filed a request for reconsideration, which the Secretary denied on May 21, 1973.

Claimant thereafter requested a hearing before an Administrative Law Judge, which hearing she received on October 10, 1973, before Administrative Law Judge Frank P. Sabatini. In a decision of December 10, 1973, Judge Sabatini ruled claimant's injuries had disabled her from the date of the accident until April 11, 1973, at which point claimant's disability ceased.

On December 21, 1973, claimant appealed this decision to the Appeals Council, which on April 25, 1974, affirmed the Administrative Law Judge's decision. This decision thus became the final decision of the Secretary, which now comes before us on claimant's appeal.

The task that we or any district court face in a case of this type is carefully delineated under the law. Judge Luongo of this District recently summarized this law when he wrote:

"In reviewing the Secretary's decision, the Court's role is narrowly circumscribed. The Secretary's decision must stand if it is supported by 'substantial evidence'. 42 U.S.C. § 405 (g). 'Substantial evidence' has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' Consolo v. Federal Maritime Commission, 383 U.S. 607, 620, 86 S.Ct. 1018, 16 L.Ed.2d 131 . . . (1966). In deciding whether the Secretary's decision is supported by substantial evidence, the Court must look at the record as a whole. Vitek v. Finch, 438 F.2d 1157 (14th Cir. 1971); Blanks v. Richardson, 439 F.2d 1158 (5th Cir. 1971).

"The test for disability is two-pronged: (1) a determination of the extent of the physical or mental impairment and (2) a determination whether that impairment results in an

inability to engage in substantial gainful activity. Stancavage v. Celebrezze, 323 F.2d 373 (3rd Cir. 1963); Janek v. Celebrezze, 336 F.2d 828 (3rd Cir. 1964). There are four elements of proof to be considered in making a finding as to claimant's ability or inability to engage in any substantial gainful activity: (1) medical data and findings, (2) expert medical opinions, (3) subjective complaints and (4) claimant's age, educational background and work history. Dillon v. Celebrezze, 345 F.2d 753, 755 (4th Cir. 1965)."

With these standards in mind, we turn to the record before us.

The record indicates claimant was born on August 4, 1949 (Tr. 77) graduated high school (Tr. 32), pursued a course in beauty culture for a year and a half and became a licensed beautician. After holding several jobs as a beautician for several years, including a period of self-employment for one and a half years, claimant then became a sewing machine operator, at which job she worked for approximately six months, until her automobile accident on March 14, 1972.

The medical evidence introduced at claimant's hearing (Exh. 11) indicates that as a result of this accident, claimant sustained a comminuted fracture of the pelvis, injury to the sacroiliac joint, fracture and dislocation of the left hip, ruptured bladder, and rib injuries. Claimant was treated in the intensive care unit of Hershey Hospital, received one unit of blood, and underwent an operation in which two Steinman pins were inserted to connect her femur and left hip. Claimant subsequently remained in traction for six weeks.

As to whether these injuries left claimant disabled from any gainful employment after April 11, 1973, the relevant evidence at claimant's hearing consisted of subjective testimony by claimant and opinion testimony by a vocational expert, letters from two doctors, and testimony of the Secretary's Medical Advisor. We shall consider each of the above in turn.

The Administrative Law Judge amply summarized claimant's testimony beginning at page 4 of his decision, where he wrote:

"Presenting symptomatology is described as pain in left hip and the back area. She says she is unable to sit nor (sic) stand for any period of time. She describes that she can walk about 100 feet then has to sit down. She is unable to stand for any reasonable period of time. She is not able to bend very far and is unable to move her left leg out too far. She has trouble in ascending stairs, can neither squat nor flex. If she sits for any period of time, her hip becomes stiff and sore. She states that she does not derive much relief from various medications which she takes. She states that the pain also interferes with rest at night. In this regard she also states that she takes about three naps during the day. Although she does not use a bed board, she says she sleeps on a hard mattress. She feels that damp weather aggravates her symptomatology, particularly the pain in the leg, hip and back. She feels that she is more comfortable when she lies in a supine position.

Examination of the claimant by counsel develops matter partly reiterative and somewhat amplificatory of matter adduced by the undersigned. She repeats that she can only walk about 100 feet, afterwards she has a lot of pain in the back and leg and hip, necessitating rest periods for three or four minutes before she is able to proceed again for another short distance. Then it becomes necessary for her to lie down for about half an hour. Counsel pointed to the fact that the claimant arose on several occasions during the hearing. She states that she can sit about eight to ten minutes in one stretch and then has to get up and stretch her legs and walk around because her hip becomes sore. She is unable to climb steps by herself and requires assistance from her husband. She says her husband takes care of a

lot of household duties, such as, washing, laundering, cleaning and cooking. Because she experiences pain in the hip, back and leg to such an extent, it is necessary for her to lie down. She states that the pain is constant but is aggravated by damp and cold weather. It is necessary for her to change positions to relieve the pain."

The testimony of the vocational expert contained two relevant parts. First, the law judge asked the expert, Mr. Starosta, to assume that the medical evidence did not indicate claimant could not engage in sedentary activity. On this assumption, Mr. Starosta said claimant could engage in sedentary employment. The judge then asked Mr. Starosta to assume that the symptoms and physical limitations claimant testified she had actually existed.* On this assumption, Mr. Starosta testified that claimant would be unable to obtain any substantially gainful employment, since the types of sedentary work which claimant was qualified to do would require working 7½ hour days, five days a week.

Next come the letters from the two doctors. The first such doctor, Stanley Gordon, M.D., of the Hershey Medical Center, wrote three letters which were submitted at claimant's hearing. In his first letter dated October 21, 1972, Dr. Gordon wrote that claimant had ninety degrees of flexion, slight rotation, and certainly less than normal motion in her hip area.

In his second letter, dated March 16, 1973, Dr. Gordon wrote that claimant had reached a point at which she needed a cane to walk, incurred pain when standing, had degenerative changes in her sacroiliac joint and had lumbosacral plexis injury. He further stated

"I do not feel that Marie Greene could tolerate any sort of occupation that would require standing or vigorious physical activity. It is possible that she might be able to work part-time some sedentary occupation that did require a great deal of walking or moving around." (Tr. 106).

Dr. Gordon also wrote in this letter that because claimant's symptoms had persisted for so long, he was not optomistic that claimant would improve further. Finally, he stated she would need sacroiliac fusion and reconstructive procedures for her hip.

In his last letter, of August 2, 1973, Dr. Gordon wrote of claimant's condition:

"Since these injuries, she has continued to have pain around her left hip, buttock and sacroiliac joint particularly with activity. I feel at this time that she is unable to engage in any gainful employment and is therefore totally and permanently disabled.

I hope this will help her obtain some compensation from the Bureau of Vocational Rehabilitation because I truly feel that the nature and extent of this young lady's injuries were disabling." (Tr. 120)

The other doctor whose letter was introduced into evidence at claimant's hearing was Lawrence Weisbrod, an Orthopedic Surgeon. His letter, dated April 16, 1973, set forth the limitations of claimant's hip motion, as well as that claimant had advanced osteoarthritis of the left acetabulum, and that claimant's prognosis was poor with continued weight bearing. Dr. Weisbrod stated in addition:

"This patient would be unable to stand for any period of time and the only type of work that she is capable of doing at the present time or in the future unless some operative procedure is performed, would be one of a completely sedentary nature." (Tr. 108).

The other medical testimony came from Dr. Sanford B. Sternlieb, an orthopedic surgeon, who testified at claimant's hearing in the capacity of a medical advisor pursuant to his contract with the Bureau of Hearings and Appeals. Dr. Sternlieb reviewed all medical evidence of record, including the evidence introduced at claimant's hearing itself, but never personally examined claimant.

Dr. Sternlieb believed that the report of Dr. Weisbrod contained a clerical error in the transcription of numbers relating to joint measurements, and Dr. Sternlieb consequently felt such error prevented his, Dr. Sternlieb's, discerning a clear picture of claimant's condition.

Dr. Sternlieb did say, however, that although some figures appeared to be in error, others did not, and Dr. Sternlieb confirmed that claimant's symptoms were consistent with the type and extent of injury claimant had incurred. Dr. Sternlieb also testified the symptoms could become worse and that if claimant's problem persisted, there could be a decrease in motion in claimant's hip joint, with a related decrease in claimant's pain, since motion and weight bearing, according to Dr. Sternlieb, caused the pain.

Dr. Sternlieb agreed with Dr. Gordon's opinion that further surgery probably would aid claimant. Dr. Sternlieb said also that while pain is a subjective matter, affected by variables such as threshold, motivation, and activities, claimant in this case had an objective basis for her complaints of pain.

Dr. Sternlieb testified in addition that the absolute minimum period of recuperation following injuries of claimant's type would be six months, but that in claimant's case, because of the type of injury, the period of recovery might well extend up to or beyond a year.

Dr. Sternlieb also said that sitting may present a problem for some type of fractures of the pelvis or coccygeal area, but that persons with problems of claimant's type usually get along well when seated although they have a great deal of difficulty when first rising from a seated position and subsequently with the first few steps.

Finally, the judge asked Dr. Sternlieb whether the medical evidence indicated that claimant could do sedentary work on a 7 to 7½ hour a day basis, five days a week. Dr. Sternlieb replied he had had many patients with hip arthritis who had been able, for example, to operate a sewing machine without much difficulty, since no one really worked 7 to 7½ hours without breaks of some kind.

■ Viewing this record in its entirety, we do not believe it contains the substantial evidence necessary to support the conclusion of the Administrative Law Judge and the Secretary that claimant is not disabled. The record clearly establishes, and no one disagrees that the only type of work claimant might possibly do would be that of a sedentary nature. The issue is instead whether claimant can do even this type of work to a substantially gainful extent. Claimant contends she cannot, and the Secretary disagrees. We believe the total record sufficiently establishes claimant's contention but contains no substantial evidence to support the Secretary's position.

Claimant testified to having certain symptoms, specifically pain to a substantial degree while sitting for any period of time and the necessity of frequent rest in a supine position.

Mr. Starosta, the vocational expert, testified that these symptoms, if they in fact existed, would prevent claimant's obtaining any gainful employment, because claimant could not work the hours necessary for such employment. Since the record contains no evidence to refute Mr. Starosta's testimony, the principal questions to deciding claimant's disability become, first, whether the record contains sufficient evidence to establish that claimant's symptoms in fact exist, and if so, second, whether the record nonetheless contains substantial evidence sufficient to support the contrary conclusion of the Administrative Law Judge and the Secretary.

On the first issue, we think the record contains the evidence sufficient to support claimant's subjective symptom testimony. Dr. Gordon concluded as of August, 1973, after approximately a year of treatment and observation of claimant, that claimant was totally disabled. Such conclusion necessarily contains the related implicit conclusion that claimant in fact has the disabling symptoms of which she complains.

■ We believe both reason and law dictate that this conclusion by a physician who has observed and treated claimant over a period of a year establishes the validity of claimant's symptoms, absent substantial evidence to the contrary, see, e. g., Kennedy v. Weinberger, 369 F.Supp. 336 (E.D.Pa.1974). And in this case, we find no such substantial contrary evidence anywhere in the instant record.

The only medical opinions in this case other than that contained in Dr. Gordon's last letter, referred to above, came in Dr. Gordon's earlier two letters, Dr. Weisbrod's letter, and the testimony of Dr. Sternlieb, and none nor all of these opinions constitute substantial evidence that claimant's symptoms are not in fact as she testified.

In the case of Dr. Gordon's earlier letters, even if they contained contradictions of his last letter, we would incline towards giving conclusive weight to the last letter, since it came after longer observation and treatment than the first two. In fact however, Dr. Gordon's earlier letters contain no opinions which contradict the opinion in his final letter.

In his first letter Dr. Gordon said only that claimant despite various serious injuries, "seems to be getting along fairly well." Neither this conclusion, nor any other part of this letter in any way refers to whether claimant's symptoms and condition would permit her to work at any substantially gainful activity.

In his second letter Dr. Gordon said simply that claimant at some point might possibly do "part-time" sedentary work. Such opinion left entirely open the possibility, as Dr. Gordon later concluded after further observation, that claimant's condition could develop to preclude even such part-time sedentary work.

■ More important, however, for purposes of determining whether claimant in this case is disabled Dr. Gordon's opinion that claimant could do only part-time work is entirely consistent with the conclusion that claimant is disabled, for we believe the ability to work only part-time does not constitute the ability to perform substantial gainful employment within the terms of the Social Security Act. Cf. McDowell v. Richardson, 439 F.2d 995 (6th Cir. 1971) in which the Court held *inter alia* that substantial evidence did not support the Secretary's decision that claimant was not disabled, where among other things a vocational expert had testified that while claimant could do certain work, he not perform that work on a basis of seven or eight hours a day.

Perhaps more important, however, even if part-time work would qualify as substantial gainful employment, we have no evidence that such work is available to claimant. The only work which the vocational expert in the instant case testified claimant might obtain were full-time jobs, requiring the ability to work seven to seven and one-half hours a day.

■ As for Dr. Weisbrod's letter, in which he stated his opinion that the only type of work claimant might possibly do would be that of a completely sedentary nature, we find it unclear whether Dr. Weisbrod meant work on a full or part-time basis. Viewing the letter in its entirety, however, and especially its pessimistic prognosis, we believe the more reasonable interpretation is that Dr. Weisbrod had in mind only part-time work. At the very least given the general thrust of this letter we would not think it reasonable to infer from it a conclusion that claimant could do full-time work absent more persuasive indication than the letter itself presents that such was the conclusion Dr. Wiesbrod intended to convey. We do not feel free to presume evidence adverse to a claimant seeking disability payments, where other evidence supports the claimant's contention of disability, and where any such presumption would have to rest on significant speculation. Cf. Barth v. Weinberger, 378 F.Supp. 596 (E.D.Pa.1974).

Finally, we do not believe the testimony of Dr. Sternlieb, the Secretary's Medical Advisor, supplies substantial evidence that claimant's symptoms are not genuine. First of all, Dr. Sternlieb

not only failed to deny the existence of claimant's professed symptoms, but in fact said the symptoms she claimed would be expected, given the injuries she sustained, and that these symptoms could worsen.

Secondly, Dr. Sternlieb never contradicted Dr. Gordon's opinion that claimant's condition would prevent her working at a substantial gainful activity. When asked if claimant's symptoms would permit her to work at sedentary activity for seven to seven and a half hours a day, Dr. Sternlieb said only that he had known some persons with similar hip conditions who had done such work.

Such conclusion contains a major flaw with respect to constituting substantial evidence against claimant's disability claim. A conclusion as to what some other individuals can do, even with injuries similar to claimant's, cannot serve as the basis for a conclusion as to what claimant can do, since as Dr. Sternlieb himself noted, persons with similar conditions can have different degrees of pain, and pain constitutes an important variable in the equation which determines whether a person is disabled.

Finally, even had Dr. Sternlieb expressed an unequivocal opinion that claimant in this particular case did not have pain sufficient to prevent her working full-time, we would have to discount such a conclusion, since Dr. Sternlieb never himself examined claimant. On the facts of this case, we think the opinion of a physician who has never treated or examined claimant cannot serve as substantial evidence in the face of contradictory opinion evidence by other physicians who have personally examined and treated the claimant, especially where one such physician has seen the claimant for more than a year. Cf. Branham v. Gardner, 383 F.2d 614 (6th Cir. 1967); Hayes v. Gardner, 376 F.2d 517 (4th Cir. 1967); Wayne v. Finch, 313 F.Supp. 898 (D.C.N.C.1969).

As we said earlier, substantial evidence is evidence which makes a conclusion reasonable. Viewing the evidence of the above record, we do not believe substantial evidence supports the Secretary's conclusion here, because we do not believe such record contains evidence to render reasonable the Secretary's conclusion that claimant's symptoms are not as she testified. Against the testimony of claimant that she has disabling symptoms, the confirmation of claimant's claimed disability in the opinion of a doctor who has examined her over the period of a year, and the admission by the Secretary's own Medical Advisor that one would expect claimant's alleged symptoms in light of her injuries, we find only the opinion of the Medical Advisor that although he has not personally examined claimant, he does not believe she is disabled from working full-time because other persons with similar hip conditions can work full-time. We simply do not believe this latter conclusion constitutes a reasonable basis for the Secretary's conclusion in light of the countervailing evidence on the record.

Accordingly, since we conclude the Secretary's decision does not rest on substantial evidence, and since we find no genuine issues of material fact remaining in this case, we shall grant claimant's summary judgment motion and deny defendant's cross-motion.