**Robert BOYD, Plaintiff,**

v.

**Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant.**

Civ. A. No. 88–7177.

United States District Court, E.D. Pennsylvania.

May 8, 1989.

---

Barry H. Oxenburg, Oxenburg & Frankel, Philadelphia, Pa., for plaintiff.

Michael M. Baylson, U.S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

KATZ, District Judge.

This is an action for judicial review of the final decision of the Secretary of Health and Human Services ("Secretary") denying the plaintiff's claim for disability benefits, disability insurance benefits and supplemental security income benefits. For the reasons that follow, I will reverse the Secretary's decision.

The plaintiff in this case, Mr. Robert Boyd, claims that, while working as a sanitation laborer, he was struck by an automobile and became disabled. At a hearing before an Administrative Law Judge ("ALJ"), plaintiff submitted evidence to demonstrate both an impairment due to a back injury and an impairment due to alcoholism. The ALJ considered each impairment separately and concluded that neither was disabling.

■ The ALJ erred in analyzing each of the plaintiff's impairments separately, rather than evaluating 'the claimant's overall condition' and reviewing the plaintiff's impairments in *combination.* *Nangle v. Heckler,* 598 F.Supp. 341, 343 (E.D.Pa. 1984) (emphasis in original); *Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir.1983). Even assuming that neither impairment alone is disabling, the ALJ must "evaluate the claimant's alcoholism in conjunction with his other impairments." *Nangle,* 598 F.Supp. at 342 (citation omitted); *see also Burnam v. Schweiker,* 682 F.2d 456, 458 (3d Cir.1982). After reviewing the evidence as to each of plaintiff's impairments and their combined effect, I find that the ALJ's decision ignores the testimony of the plaintiff and several physicians and is not supported by substantial evidence.

At the administrative hearing, plaintiff testified that he was suffering from a significant amount of pain. For example, plaintiff testified that the activities of sitting, standing and walking are limited by pain and that his only real relief is to be in a non-weight bearing position in a recliner chair, in which he spends most of his time. (Tr. 74–75). Plaintiff also testified that his back impairment creates difficulty in standing, which he can do for only 20 to 30 minutes at a time, and that his back "gives out all the time" without warning. (Tr. 76, 61).

■ A claimant's testimony as to subjective pain is entitled to great weight, particularly where such testimony is supported by competent medical evidence. *Dobrowolsky v. Califano,* 606 F.2d 403, 409 (3d Cir.1979). In addition, to succeed in a claim of subjective pain, the claimant must produce objective evidence of some condition that could reasonably produce pain. *Green v. Schweiker,* 749 F.2d 1066, 1070–71 (3d Cir.1984).

Plaintiff produced competent medical evidence in support of his claim. After his

accident, plaintiff was placed under the care of Maurice Romey, M.D., a neurosurgeon. Dr. Romey repeatedly commented on plaintiff's presenting with a "significant amount of low back and sciatic pain." (Tr. 211, 213, 215, 218–19). Dr. Romey found that plaintiff was permanently disabled for physical gainful employment. (Tr. 226–228, 274–275).

The reports by Dr. Stoner, who examined plaintiff at the Secretary's request, support Dr. Romey's findings. Dr. Stoner found a generalized tenderness over plaintiff's neck and upper back with point tenderness in the lumbosacral region. (Tr. 243–45). Dr. Stoner noted that plaintiff's lower extremities showed depressed reflex at the left knee and ankle and that there was a specific weakness of the extensor hallicus longus on the right. (*Id.*) The range of motion study of the spine noted lateral flexion which was 50% of normal. Dr. Stoner's final impression was right lumbar radiculopathy. (*Id.*)

Dr. Martin Gelman, a psychologist, observed that plaintiff's posture was stiff and guarded, and that his gait and carriage were unsteady and poorly coordinated. (Tr. 247–51). Dr. Gelman reported that plaintiff's activities of daily living and social functioning after the accident were markedly restricted and concluded that plaintiff suffered from post-traumatic stress disorder characterized by a "general numbing of responsiveness to a reduced involvement with the external world characterized by a markedly diminished interest in activities and constricted affect." (*Id.*) Finally, Dr. Stoner noted that plaintiff's wife had to assist him in undressing and dressing before and after the examination, and that plaintiff was wearing a low back support consisting of elastic canvas covering a plastic support. (*Id.*)

Plaintiff also submitted objective medical evidence of a painful condition. The results of a magnetic resonance imaging ("MRI") test were consistent with disc pathology. Specifically, the MRI revealed extradural defects between L4–5 and L5–S1. There was almost no signal between the L5–S1 vertebral body; this is also consistent with disc pathology. He underwent a lumbar myelogram which demonstrated a large herniated disc at L5–S1 which extended from the midline to the left causing impingement on the thecal sac and effacement of the left L5–S1 nerve root. (Tr. 211).

The ALJ also based his rejection of plaintiff's complaints of pain on his own observation that the cane that plaintiff uses when he leaves his house did not appear to have been used. This fact is explained, however, by plaintiff's uncontradicted testimony that but for a brief and unsuccessful attempt to return to work he had been virtually housebound since his accident, and he only used the cane when he left the house.

Finally, the ALJ noted that despite the evidence of plaintiff's large herniated disc and cervical nerve root irritation, the plaintiff had refused back surgery, was not taking pain medication, and had not seen a physician since August of 1985. Plaintiff testified, however, that he could not afford to pay any of his medical bills because his workers' compensation claim had been denied and he was unable to secure an attorney to represent him in that claim. (Tr. 49, 52–54). He further testified that he was afraid to undergo back surgery because of an adverse reaction from the myelogram. (*Id.*)

In addition to plaintiff's back problems, his alcoholism alone or combined with other impairments "may be severe enough to constitute a compensable disability" if it prevents him from engaging in substantial gainful employment. *McShea v. Schweiker*, 700 F.2d 117, 118–19 (3d Cir.1983). "The Secretary must not only determine whether [the claimant] has lost the ability to control his addiction to alcohol, but also, how the evidence of alcoholism and its effects on his other impairments relates to his functional abilities." *Purter v. Heckler*, 771 F.2d 682 at 699 (3rd Cir.1985).

The ALJ found "no basis for determining that the claimant has an alcohol addiction." (Tr. 14). This finding is not supported by substantial evidence.

The ALJ relied on the fact that no mention of an alcohol addiction was made in the "comprehensive psychological evaluation" of plaintiff conducted by psychologist Martin Gelman. (Tr. 247–49). The ALJ's analysis, however, "fails to recognize that an alcoholic's negative attitude is a common accompaniment of the disease." *McShea v. Schweiker*, 700 F.2d 117, 119 (3d Cir.1983). The record reflects that plaintiff, like many alcoholics, denies his alcoholism. Therefore, there is no reason to expect that he would mention such a problem to a psychologist.

Evidence in the record, however, demonstrates that on July 15, 1985, plaintiff was admitted to Frankford Hospital for detoxification. (Tr. 221). The treating physician diagnosed plaintiff as having "alcohol dependency and alcohol withdrawal syndrome." (Tr. 221). Moreover, plaintiff's wife testified that plaintiff was drinking day in and day out. (Tr. 102).

The evidence in the record before me is unclear as to whether plaintiff's physical difficulties, particularly his repeated falls down flights of stairs, stem from his back injury alone, from his alcoholism, or from a combination of the two impairments. On May 30, 1985, plaintiff informed Dr. Romey that his back hurt so badly that he could not even perform the light duty job of night watchman for his employer; while attempting to do so, his back "gave out" and he fell down the stairs. (Tr. 70–71). Plaintiff's employer, however, believed that plaintiff had been intoxicated when he fell, and referred him to Frankford Hospital for alcohol treatment. (*Id.*). In addition, plaintiff was admitted to John F. Kennedy Memorial Hospital on November 4, 1985, stating that his back had given out on him and he had fallen down his steps at home and hurt his right leg. (Tr. 60, 21, 239). The emergency room record states that plaintiff has a history of "lumbar disc disease with falling." (Tr. 231). Plaintiff also testified that, on another occasion, he fell down the steps leading to his basement, struck his head and required seven stitches. (Tr. 61). Whether plaintiff's difficulties stem from one of his impairments alone or from the two in combination, the ALJ's finding that plaintiff is not disabled and that he retains the residual functional capacity to perform both light and sedentary work plaintiff is not supported by substantial evidence.

■ In other cases involving claimants with alcohol addictions, courts have expressed concern that paying disability benefits to an alcoholic might result in worsening his condition. *See McShea*, 700 F.2d at 117; *Nangle*, 598 F.Supp. at 341. In such cases, the courts have recommended that the Secretary consider referring the claimant to treatment pursuant to 20 C.F.R. § 416.720. Moreover, the benefits may be paid to a beneficiary or representative rather than directly to the claimant himself. *McShea*, 700 F.2d at 119; *Andrews v. Heckler*, 573 F.Supp. 1089, 1093–94 (E.D. Pa.1983); *Nangle*, 598 F.Supp. at 344. I reject this paternalism. Plaintiff has sought hospitalization for alcohol detoxification himself. There is a reasonable basis to expect him to attend to his problem, even if he denies it.

Because the Secretary's decision was not upheld by substantial evidence, I will reverse the decision and grant Mr. Boyd benefits. I will remand this case to the Secretary for a calculation of benefits.

An appropriate order follows.

### ORDER

AND NOW, this 8th day of May, 1989, upon consideration of the parties' Cross-Motions for Summary Judgment, it is hereby ORDERED that the plaintiff's Motion for Summary Judgment is GRANTED and the Secretary's Motion is DENIED and that judgment is entered in favor of plaintiff and against defendant. The case is remanded to the Secretary for the purpose of calculating benefits.