Robert **MOYER**, Plaintiff,

v.

Donna E. **SHALALA**, Secretary of Health and Human Services, Defendant.

Civ. A. No. 93–0222.

United States District Court,
E.D. Pennsylvania.

July 29, 1993.

Carol Lynn Wallinger, Christina J. Barbieri & Assoc., Philadelphia, PA, for plaintiff.

Dorothea J. Lundelius, Sp. Asst. U.S. Atty., Health & Human Services—Region III, Linda L. Shafer, Philadelphia, PA, for defendant.

## *ORDER*

KATZ, District Judge.

**AND NOW,** this 29th day of July, 1993, upon consideration of Plaintiff's Motion for Summary Judgment and the Defendant's Motion for Summary Judgment, it is hereby **ORDERED** that Plaintiff's Motion is GRANTED and the Secretary's decision is REVERSED. The matter is REMANDED to the Secretary for the calculation and payment of benefits. Summary judgment is entered in favor of the Plaintiff for the following reasons.

## I. PROCEDURAL BACKGROUND

Plaintiff, Robert Moyer ("Moyer"), filed an application for Title II disability insurance benefits on November 28, 1990 alleging disability beginning May 28, 1986. *See* Record at 57–59.[1] On January 3, 1991, this applica-

1. Moyer's insured status for purposes of entitle- ment to disability insurance expired on Decem-

tion was denied and on March 26, 1991, the application was denied on reconsideration. *Id.* at 60–65 & 69–74. Moyer then filed a request for a hearing which was held before Administrative Law Judge Gerald Spitz on November 8, 1991. *Id.* at 22–56. By a decision dated February 18, 1992, Moyer's request for benefits was denied. *Id.* at 10–17. Moyer then requested that the Appeals Council review the ALJ's decision, and by an Order dated November 17, 1992, this request was denied. *Id.* at 3–4. Moyer, having exhausted his administrative remedies, filed a complaint with this court seeking a reversal of the Secretary's final decision as it is not supported by substantial evidence.

## II. FACTS

Moyer was born on August 5, 1951. *See* Record at 57. He received an associate degree in electrical engineering from Spring Garden College in 1973. *Id.* at 29 & 42. He has performed predominately electrical-type maintenance work and some painting work. *Id.* at 42. He last worked in 1986. *Id.* at 29. Moyer was first injured in 1983 when he was working at the Philadelphia Naval Shipyard. *Id.* at 29–30. On his second day on the job he was injured when a 440 electrical fuse panel exploded and injured his right hand. *Id.* at 29–30. Moyer is right handed. *Id.* at 37. After that injury, Moyer underwent multiple surgeries on his right hand and was returned to work at the Naval Shipyard with restricted duty, answering telephones. *Id.* at 30–31.

Moyer reinjured his right arm in 1986 while pushing a pallet. *See* Record at 31. Since that time, his right arm has been treated with injections, oral medications and therapy. *Id.* at 32. Later in 1986, Moyer was terminated from his job at the Shipyard because there was no work for someone with his limitations. *Id.* at 35 & 86. He receives federal worker's compensation benefits monthly. *Id.* at 35.

During the Administrative Law Judge ("ALJ") hearing, Moyer described the pain in his right hand as a shooting pain from the fingers up the arm like someone has "stabbed you with a knife." *See* Record at 32. He further testified that his first two fingers are constantly numb and that any use of his right arm makes his pain worse. *Id.* at 32. Moyer can sometimes pick up a pen but only for five minutes and sometimes not at all; the problem with holding and grasping things is that his first two fingers do not close automatically and that gives him trouble with his grip. *Id.* at 33. Moyer testified that on a good day the heaviest thing he could lift with his right hand was approximately half a pound, which he could hold for minutes, sometimes only seconds, until he loses his grip. *Id.* at 33. At the hearing, Moyer was wearing a brace on his right hand that covers his arm from his palm to his elbow. *Id.* at 37.

Moyer also suffers from back pain, which is a result of an injury he did not sustain at work. *See* Record at 34.[2] In October 1988, Moyer herniated a lumbosacral disc. *Id.* at 34. At that time, he was treated by Drs. Kim Koo and Seymour Leiner. *Id.* at 34. Moyer was offered surgery with a 30 percent chance that it would improve his problem and a 70 percent chance it would not; therefore, he has not had the surgery. *Id.* at 35.

Moyer testified that the pain in his back feels like his back is "locking up" and that the pain is semi-constant, five out of seven days a week. *See* Record at 36. In addition to the pain, Moyer says he has a numbness which goes down his right and left legs and awakens him at night. *Id.* Moyer cannot sit for long periods. *Id.* Moyer is currently taking Flexeril, Nuprin and Tylenol to ease his pain. *Id.* In addition, Moyer testified that the pain wakes him up every night, and that he is often awake for an hour and a half to two hours during the night, which makes him tired the next day. *Id.*

---

ber 31, 1988. *See* Record at 78. Moyer must establish that he was disabled on or before that date in order to be eligible for disability insurance benefits. 42 U.S.C. § 423(a)(1)(A); 20 C.F.R. § 404.131(a).

**2.** On October 16, 1988, Moyer was helping a friend hook up cable reception to his television when Moyer sneezed and as a result herniated a disc in his back. Record at 34.

Moyer has traction on his bed at home for his back, which he uses twice a month or sometimes once a week, depending upon the pain. *See* Record at 37. Moyer also uses a pillow under his back to cope with his back pain. *Id.*

Moyer can sometimes write with his right hand by sticking a pen between his first two fingers but he stated that the writing is not legible. *See* Record at 38. At the time of his ALJ hearing, Moyer was unable to write legibly with his left hand. *Id.* at 42. In addition, because of his hand problems, Moyer needs help to tie a necktie or shoe laces. *Id.* at 38. Moyer can walk a couple of blocks before his back pain forces him to stop. *Id.* at 39. He can sit only 40 minutes before he must get up. *Id.* Moyer's wife does all of the household chores such as cooking, food shopping and loading dishes in the dishwasher. *Id.* Moyer's hand is too unreliable to perform these functions and he has broken too many things. *Id.* In addition, Moyer's wife does the dusting and vacuuming because he has trouble using that equipment with his right hand and back problems. *Id.*[3]

Moyer is able to drive short distances, after which his back begins to bother him; he drives a car with automatic transmission using his left hand and performs whatever shifting maneuvers necessary by using his left hand. *See* Record at 40.

During the ALJ hearing, a vocational expert testified that someone with Moyer's disability could work as "a coding clerk, a dispatcher of maintenance, a compiler, a telephone solicitor, inspector of components, work order clerk, sales clerk, and tool crib attendant." *See* Record at 45. All of these jobs are the light to sedentary exertion levels; the sales clerk, tool crib attendant and order filler being light and the rest sedentary. *Id.* at 46. These jobs exist in the regional or national economy at the level of approximately 10,000 such positions in the Delaware Valley. *Id.*

After the expert was cross-examined, the scope of Moyer's ability to perform such jobs seemed limited. The expert was asked how many of the jobs that he had previously listed required writing more than Moyer's name. *See* Record at 47. The expert replied the coding clerk job would require writing one or two numbers every minute to every five to ten minutes. *Id.* The expert further testified that if Moyer had trouble holding a pen for any length of time in his right hand, that would pose a problem. *Id.* at 48–49. The expert further testified that for the record he was not assuming in his list of potential jobs that Moyer would be writing with his right hand, but rather his left hand however awkward that might be. *Id.* at 49.

Regarding the telephone solicitation job, the expert testified that he was assuming the position had a headset/mouth piece for the worker so that holding the phone and simultaneously dialing the phone and taking notes would not be necessary. *See* Record at 50.

Regarding the tool crib attendant position, the expert testified that the tools which are provided to the workers by the tool crib attendant vary in size and can range up to 40 to 50 pounds. *See* Record at 51. When questioned regarding whether Moyer would be able to do this job based upon his back impairment, the expert testified that, in such a case, the workers would come into the tool crib to pick up the equipment. The expert, however, admitted that most tool crib attendant jobs do not allow workers into the tool crib. *Id.* at 51. The expert was not able to estimate how many employers, if any, would modify the rules to allow workers into the tool crib. *Id.* at 52.

Regarding the sales clerk position, the expert testified that the position required standing for the entire shift and that Moyer's back problems as he testified would eliminate that position. *See* Record at 54. The expeditor, coding clerk and dispatcher of maintenance positions would be sitting or standing at Moyer's option. *Id.*

---

**3.** The Secretary has pointed to Moyer's trips to the grocery store to buy bread and milk and his attempts to help with household chores as evidence that "Moyer's pain is not as debilitating as he alleges." Defendant's Motion at 17. However, the Third Circuit has indicated that "shopping for the necessities of life is not a negation of disability" and "[d]isability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity." *Smith v. Califano*, 637 F.2d 968, 971 (3d Cir. 1981) (Higginbotham, J.).

Moyer testified that he might be able to work depending on his employer's understanding of his limitations and the fact that he would not be able to do any of the jobs described by the expert five days a week, 50 weeks a year. *See* Record at 55. He stated that somedays he cannot even get out of bed depending on the weather. *Id.* Dampness and rainy weather make it hard for him to get out of bed and there are some days that he does not get out of bed until late afternoon. *Id.* In an average month, this can be as many as five days a week or a week straight depending upon the weather or how much sleep he gets. *Id.*

## III. DISCUSSION

■ This court reviews the Secretary's decision to determine whether there is substantial evidence in the record to support the Secretary's decision. 42 U.S.C. § 405(g). The Secretary's finding regarding any fact is conclusive if it is supported by substantial evidence. *Id.; Richardson v. Perales,* 402 U.S. 389, 390, 91 S.Ct. 1420, 1421, 28 L.Ed.2d 842 (1971). The phrase "supported by substantial· evidence" refers to " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Perales,* 402 U.S. at 401, 91 S.Ct. at 1427 (citation omitted). This court finds that the evidence of record does not support the findings or conclusions of the Secretary. The ALJ and the Appeals Council ignored significant clinical medical evidence of the treating physicians as well as Moyer's own testimony as to his pain and restrictions.

■ The Social Security Act requires that to be eligible for disability benefits a claimant must have medically determinable physical or mental impairments which are of such severity that he is not only unable to perform his previous work, but also, cannot, considering his age, education and work experience, engage in any kind of substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2)(A). Disability is not determined merely by the presence of impairments, but by the effect the impairments have on the individual's ability to perform substantial gainful activity. *Capoferri v. Harris,* 501 F.Supp. 32, 36 (E.D.Pa.1980) *aff'd* 649 F.2d 858 (3d Cir.1981). The claimant bears the burden of furnishing evidence of disability. 42 U.S.C. § 423(d)(5)(A).

The Social Security Act and its regulations provide a five-step evaluation process in determining disability. *Jones v. Sullivan,* 954 F.2d 125, 129 (3d Cir.1991) (citing 20 C.F.R. § 404.1520). "The Secretary's regulations provide that a claimant will be considered disabled and receive benefits only if the claimant demonstrates that (1) he is not currently engaged in any substantial gainful activity; (2) he is severely impaired; and either (3) his impairment is listed in 20 C.F.R. pt. 404, subpt. P, App. 1, in which case he is presumptively disabled, or (4) his impairment prevents him from meeting the physical and mental demands of the kind of job that he has held in the past, and (5) his impairment together with his age, education and past work experience also prevents him from doing any other sort of work." *Id.* at 129.

After going through the entire five step process (since Moyer's impairments are not listed in Appendix 1), the ALJ determined that Moyer had the residual· functional capacity to perform sedentary to light work activity. *See* Record at 16, Finding 6. Therefore, the ALJ denied benefits. The ALJ specifically found that Moyer suffers from post-traumatic carpometacarpal arthritis, status-post carpometacarpal joint fusion, status-post carpometacarpal II fusion, carpal tunnel release, status-post scaphotrapezial joint fusion with bone graft; and subligmentous herniation L4–5 disc. *Id.* at 15, Finding 3.

In addition to the burden of proving a disabling medical impairment, the plaintiff has the burden of establishing the existence of such a disability prior to the expiration of his insured status. 42 U.S.C. § 423(a), (c); *DeNafo v. Finch,* 436 F.2d 737, 739 (3d Cir. 1971). In this case, Moyer's insured status for purposes of entitlement to disability insurance expired on December 31, 1988. Based upon the record, both of Moyer's impairments existed before this deadline. *See supra* facts discussion.[4]

4. The Secretary states in her motion for summary judgment that "[t]here is no objective evi-

This court finds that the ALJ disregarded the opinions of Moyer's treating physicians, the pertinent medical records and Moyer's testimony regarding his symptoms and pain. The Secretary's decision to deny Moyer his disability insurance was not based upon substantial evidence.

A. Testimony of the Physicians

█ The opinion of a claimant's treating physician is entitled to great weight in the ALJ's determination of medical impairments as defined by the Act because the treating physician is an expert whose judgment is based upon continuous observation over a period of time. *Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir.1983); *Smith v. Sullivan*, 720 F.Supp. 62, 64 (E.D.Pa.1989) (Katz, J.). Absent persuasive contradictory evidence, the validity of the claimant's symptoms can be conclusively established by the opinion of the treating physician. *Smith*, 720 F.Supp. at 64 (citing *Greene v. Weinberger*, 391 F.Supp. 632, 637 (E.D.Pa.1975)).

In this case, the opinions of Moyer's treating physicians were not given greater weight. In fact of Moyer's three treating physicians, only Dr. Lee Osterman is mentioned in the ALJ's decision. *See* Record at 12. Drs. Kim Koo and Seymour Leiner are not included. Dr. Koo treated Moyer for his back injury in 1988. She reported Moyer had severe and localized pain in his back and buttocks area, which occasionally traveled down both legs. *Id.* at 386. Dr. Leiner treated Moyer for his back injury as well and continues to treat Moyer for both his back and hand injuries. *Id.* at 392. Dr. Leiner documented the severe pain Moyer experiences from the residual effects of his right hand injury. *Id.* at 392–94 (Exh. 27). The Discharge Summary dictated by Dr. Leiner from Moyer's October 16, 1988 admission for back pain documents a CAT scan with positive results at two lumbar levels and the possible need for surgery.[5] All of these findings are consistent with Moyer's testimony regarding his pain and limitations.

No evidence was presented which is contrary to the treating physicians' opinions so as to diminish their credibility. Even the orthopedic surgeon consulted by the Administration, Dr. Joseph Toland, submitted evidence documenting Moyer's continued severe pain in his right hand because of the fusion surgeries and his lower back pain caused by the herniated disc pressing on the spinal nerve roots. *See* Record at 190. Dr. Toland's report states that all motions of the right hand were accomplished with severe pain. *Id.* at 187–97. With regard to Moyer's back injury, Dr. Toland's diagnoses were low back pain with radiculopathy into the right lower extremity and a herniated disc. *Id.* at 190. Dr. Toland's reports and opinions were not mentioned in the ALJ's decision. The ALJ did not cite to any evidence disputing these findings.

The one doctor whose reports were quoted by the ALJ is Dr. Lee Osterman, who was the hand surgeon who treated Moyer after his injury in 1984. *See* Record at 12. Dr. Osterman's reports comment only on Moyer's right hand as Dr. Osterman did not treat Moyer for his back injury. Dr. Osterman's reports did note that Moyer will suffer partial and permanent impairment of his right hand and wrist. *Id.* at 12 & Exhibit 21.

Upon examining the record, this court finds that the ALJ did not give sufficient weight to Moyer's treating physicians. Moyer's treating physicians' testimony is entitled greater weight in determining his disability and validating his symptoms. No persuasive contradictory evidence was cited nor was there any reason given for the ALJ's failure to properly weigh the treating physicians'

dence of a herniated disc before Moyer's insured status expired in December 1988." Defendant's Motion at 15. This, however, is not supported by the record. Moyer testified that his injury occurred in October 1988. Record at 34. His claims are supported by an October 1988 CAT scan, Record at 147, which reveals subligmentous focal herniation of the L4–L5 disc centrally to the left and by Dr. Leiner's discharge summary dated October 21, 1988. Record at 394.

5. The ALJ does mention the CAT scan report in his decision, however, he incorrectly states that there was no impingement of the thecal sac. *See* Record at 13, ¶ 3. The CAT scan report states that the herniation is centrally and to the left of the disc and is impinging on the ventral aspect of the thecal sac. *See* Record at 147.

testimony. The Secretary's finding regarding the medical evidence for Moyer's disability was not supported by substantial evidence.

### B.  Evidence of Moyer's Pain

■ A claimant's testimony as to subjective pain is entitled to great weight, particularly where such testimony is supported by competent medical evidence. *Boyd v. Bowen*, 710 F.Supp. 1046, 1047 (E.D.Pa.1989) (Katz, J.) (citing *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir.1979)). The ALJ cannot decide that pain does not constitute a disability when no medical evidence refutes other evidence indicating that the pain is real. *See Smith v. Califano*, 637 F.2d 968, 972 (3d Cir.1981). An ALJ must have corroborating medical testimony to draw an inference of lack of pain. *Id.* The ALJ should give serious consideration to subjective complaints of pain, even though such complaints are not fully confirmed by objective evidence. *Id.*

Even though Moyer's complaints are fully confirmed by x-rays, a CAT scan, physical examination and repeated surgery, no such serious consideration was given in this case. *See* Record at 394, 147–49, 173–86, 242, 187–97. Moyer has clinical and laboratory data which reveal painful low back and right hand conditions. *Id.* Every doctor who examined Moyer noted he was in pain, including Dr. Toland who was consulted by the Administration. *Id.* at 187–91. Furthermore, Moyer has made attempts to resolve his chronic pain problem in his right hand and wrist, including multiple surgeries. The only condition for which he has not had surgery was his back, and Moyer testified that he has declined that surgery because he was given information of only a 30 percent success rate, with a high rate of complications possible. *Id.* at 35.[6]

The use of pain medicine is significant in determining credibility. Moyer testified and his various medical records document his continual use of xylocaine injections, Flexeril and Motrin in its various forms to help relieve his pain.[7]

During Moyer's hearing, there was no medical evidence presented refuting either Moyer's pain or his medical condition. The ALJ, however, dismissed Moyer's complaints as not credible in finding that "[t]he claimant's testimony with regard to ... pain is credible to the extent that he retains the functional capacity to perform sedentary to light work activity." *See* Record at 16, Finding 6. Moyer's complaints cannot be discredited or limited in this way without evidence of record to support a determination that the claimant is not credible. No such evidence exists in this record. Therefore, the finding that Moyer's complaints of pain were not credible are not based on substantial evidence.

### C.  Capacity to Perform Light or Sedentary Work

The ALJ found that Moyer had the capacity to perform light or sedentary work. Sedentary work requires lifting no more than 10 pounds at a time and occasionally lifting or carrying articles; it involves primarily sitting along with a certain amount of walking or standing. 20 C.F.R. § 404.1567(a). Light work requires the ability to perform sedentary work, along with the ability to lift no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; it also requires a good deal of walking or standing. 20 C.F.R. § 404.-1567(b). This finding that Moyer is capable of such work is not based on substantial evidence upon examination of the record and the relevant legal standards.

---

6.  This court cannot find basis for the ALJ's criticism of Moyer's failure to undergo risky back surgery. *See* Record at 14. This criticism without any supporting evidence does not warrant rejection of Moyer's herniated disc as a disability. In addition, the ALJ's criticism of Moyer not having ongoing treatment for his back, *id.*, is not conclusive of anything as Dr. Toland noted that physio-therapy would not help Moyer's situation.

*Id.* at 190. Furthermore, Dr. Toland did state in his report that Moyer was undergoing local treatments and persevering with them. *Id.*

7.  The ALJ in his decision states that Moyer is not taking any pain medication. *See* Record at 14. Flexeril is an anti-inflammatory medication whose primary effect is to reduce pain, and Motrin is specifically for pain.

■ Moyer has a long and continuous history of work dating back to high school, in addition to a history of returning to work after injury during an explosion in 1984. Record 95, 98. On this basis the ALJ should have given Moyer's testimony greater deference. *See Taybron v. Harris,* 667 F.2d 412, 415 (3d Cir.1981) ("[W]hen the claimant has worked for a long period of time, his testimony about his work capabilities should be afforded substantial credibility."). Furthermore, in evaluating disability, a claimant's illnesses must be considered in combination and must not be fragmented. *Beecher v. Heckler,* 756 F.2d 693 (9th Cir.1985); *Smith,* 720 F.Supp. at 64. The ALJ must analyze the cumulative or synergistic effect of all impairments in combination. There is no evidence in this record that either the ALJ or the vocational expert considered the combined effect of Moyer's conditions.

Moyer suffers severe pain on a daily basis from the injury to his right hand as well as his back problems. While it is true that Moyer may be able to use his right hand in a helping manner on an occasional basis, there is no evidence that he would be able to do this on a consistent basis. *See* Record at 191 (Dr. Toland states that he does not envision Moyer being able to use his right arm for any gainful occupation). In this case, it is the combination of injuries sustained by Moyer that makes substantial gainful activity impossible on a consistent basis.

From the vocational testimony presented, it is unclear how Moyer could be expected to do work listed by the vocational expert (such as a coding clerk, dispatcher of maintenance, compiler, telephone solicitor, inspector of components or work order clerk), when as Moyer testified, his right hand is useless, anything written with his left hand is illegible and he cannot sit, stand or walk for 8 hours at a stretch due to his back condition. *See also* Record at 187–97 (Dr. Toland finds that Moyer can stand or walk less than two hours a day and sit less than six hours, which would amount to less than an eight-hour work day).

Furthermore, Moyer cannot be expected to be a tool-crib attendant when he cannot write legibly with his left hand and he cannot lift the tools to hand them to the workmen as required. While it is true that the vocational expert stated it might be possible to modify the job to allow the workmen into the crib to retrieve the tools, the vocational expert was not able to say how many, if any, positions so-modified existed in the national or local economy. The decision that Moyer could find such a position so modified was based on just speculation and not substantial evidence, therefore, this job cannot be found to be available to Moyer.

On cross-examination, the vocational expert further conceded that the job as a sales clerk was similarly not available to Moyer if he could not stand for an entire shift, as documented by Dr. Toland's findings. *See* Record at 54.

In this case, there is no evidence that Moyer is capable of performing any of these activities on a sustained basis. No doctor, treating or consulting, found Moyer capable of lifting more than ten pounds; Moyer himself testified that lifting with his right hand is impossible and in addition it hurts his lower back. No doctor found Moyer capable of standing or sitting for a substantial period of time. Dr. Toland, the Administration's doctor, found Moyer restricted in his ability to stand or walk to only two hours a day and found he could sit less than six hours a day. None of these restrictions place Moyer in the category of being able to perform sedentary or light work. The ALJ's findings are not based upon substantial evidence in the record.

## IV. CONCLUSION

The ALJ's decision is not supported by the evidence of record nor by substantial evidence. The ALJ's finding that Moyer's complaints of pain are not credible is contrary to the medical reports of the treating physicians and no medical testimony was presented refuting these opinions. The ALJ failed to properly credit and consider Moyer's complaints, either individually or in concert, in concluding that Moyer had the ability to perform light or sedentary work. Given the fact that the ALJ's decision that Moyer retained the capacity to perform light or sedentary work is not supported by substantial evidence, this court finds that Moyer is dis-

**362**

abled for purposes of collecting disability insurance benefits.

For the foregoing reasons, the decision of the Secretary is reversed and this case is remanded to the Secretary for the calculation and award of benefits.

## JUDGMENT

**AND NOW,** this 29th day of July, 1993, upon consideration of Plaintiff's Motion for Summary Judgment and the Defendant's Motion for Summary Judgment, it is hereby **ORDERED** that JUDGMENT is entered on behalf of the Plaintiff and against the Defendant. The Secretary's decision is REVERSED. The matter is REMANDED to the Secretary for the calculation and payment of benefits. Summary judgment is entered in favor of the Plaintiff for the reasons stated in this court's order of the same date.