Faye B. YOUNG, Plaintiff–Appellant,

v.

Otis R. BOWEN, Secretary, Department of Health and Human Services, Defendant–Appellee.

No. 87–1194.

United States Court of Appeals, Fourth Circuit.

Argued May 5, 1988.

Decided Oct. 4, 1988.

John L. Smith (Turnipseed, Holland & Smith, Spartanburg, S.C., on brief), for plaintiff-appellant.

Nigel B. Jamieson (Donald A. Gonya, Chief Counsel, for Social Sec., Randolph W. Gaines, Deputy Chief Counsel, for Social Sec. Litigation, A. George Lowe, Chief, Disability Litigation Branch, Office of the Gen. Counsel, Social Sec. Div., Dept. of Health and Human Services, Baltimore, Md., Vinton D. Lide, U.S. Atty., Columbia, S.C., on brief), for defendant-appellee.

Before HALL and WILKINS, Circuit Judges, and MERHIGE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

K.K. HALL, Circuit Judge:

Faye B. Young appeals an order of the United States magistrate affirming the final decision of the Secretary of Health and Human Services whereby the Secretary refused to reconsider Young's prior unsuccessful applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") filed in 1979 and 1980.[1] Because we conclude that Young has demonstrated an entitlement to benefits based on her 1980 application which the Secretary may not constitutionally ignore, we reverse and remand for an appropriate award.

## I.

Young, a female born in 1934, has a seventh grade education and past work experience as an inspector in a textile plant. She initially applied for social security benefits on December 10, 1979, claiming that she had become unable to work due to mental illness on December 30, 1977. The concurrent application for DIB and SSI was denied initially and upon reconsideration. Young, who was not represented by legal counsel, did not seek to appeal the Secretary's decision. On July 17, 1980, Young filed a second application for SSI benefits which was also denied at the initial administrative level on March 9, 1981. Still without formal representation, she did not seek further review of that denial.

Young's third and most recent application for SSI benefits was filed on March 18, 1983. Like its predecessors, this application was also denied administratively, but

---

1. By consent of the parties, this case was referred to the United States magistrate for full adjudication pursuant to 28 U.S.C. § 636(c).

for the first time, Young, now represented by counsel, sought a hearing before an administrative law judge ("ALJ") to contest the adverse ruling. Following the hearing, the ALJ found that she was not under a compensable disability. After the Appeals Council affirmed the ALJ on May 7, 1984, thereby rendering the Secretary's decision final, Young filed an action for judicial review in district court pursuant to 42 U.S.C. § 405(g).

During the time that Young's civil action was pending before the magistrate, Congress enacted the Social Security Disability Benefits Reform Act of 1984 ("Reform Act"). That legislation required, *inter alia,* that the Secretary reconsider any determination still pending after June 7, 1983, that a person was not under a disability because of an asserted mental impairment. The statute also mandated that the Secretary promulgate new regulations for the assessment of mental disability. Pursuant to the Reform Act, the magistrate remanded the case to the Secretary for further administrative proceedings.

In accordance with the remand, a supplemental administrative hearing was held on December 13, 1986. At that hearing, Young presented extensive medical evidence in an effort to establish a present disability. Young also attempted to reopen her prior applications and to obtain benefits based on the 1979 and 1980 claims.

The available medical evidence in this matter is too voluminous to be recounted in detail. Young appears to have suffered from personality disorders and alcoholism for much of her adult life. The record reveals numerous instances of therapy undergone since 1963 at the Spartanburg Mental Health Clinic in Spartanburg, South Carolina. Two medical reports are of particular significance, however. In 1980, Doctor Henry Ritchie, M.D. prepared a psychiatric evaluation while in 1983, Doctor Luther Diehl, Ph.D, reported the results of a psychological examination.

In his report, Doctor Ritchie diagnosed chronic psychoneurosis, mixed anxiety-depression and inadequate personality. He opined that Young's progress was poor, that she was moderately severely constricted in interest, and severely restricted in activities.

Doctor Diehl also found Young's interest and activities restricted. He further reported her results on a WAIS–R IQ test as verbal–67, performance–67, and full scale–66. Although he noted that some of Young's low achievement could be attributed to depression rather than innate mental ability, Doctor Diehl, nevertheless opined that her prognosis for gainful employment was poor. In a subsequent deposition, Doctor Diehl amplified that opinion, noting that Young's other psychological problems had most likely caused her range of intelligence to decline to the borderline level (i.e. below 69 IQ) by a time "in or about 1978."

After examining the medical evidence and giving particular weight to Doctor Diehl's evaluations, the ALJ concluded that Young had established the existence of a disabling mental impairment as provided in Section 12.05(c) of the applicable regulations, 20 C.F.R. § 416.925.[2] The ALJ declined, however, to reopen Young's prior applications, concluding that there was "insufficient new and material evidence" to warrant such an action.

On review, the Appeals Council agreed that Young was presently disabled and entitled to SSI benefits. The Council declined, however, to base that determination upon section 12.05(c), reasoning that Young was unable to establish a "life-long" mental deficiency required for all section 12.05 impairments. The Council agreed with the ALJ's refusal to reopen the 1978 and 1980 applications, concluding that Young's present level of impairment could not be related back to the time period covered by the previous applications. To the extent

**2.** Section 12.05 generally applies to claims for disability based upon mental retardation and autism. Section 12.05(c) provides for a finding of disability when a claimant demonstrates:

A valid verbal, performance, or full scale IQ of 60 to 69 inclusive and a physical or other mental impairment imposing additional and significant work-related limitation of function;

that Doctor Diehl had opined that Young was disabled "in or about 1978," the Council rejected that judgment as "speculative."

At this juncture, Young returned to court alleging that she had lacked the mental capacity to contest the two earlier denials of benefits and that the Secretary's refusal to reopen consideration of those applications amounted to a violation of constitutional due process. The magistrate disagreed, noting that Young had demonstrated the ability to request an administrative reconsideration in 1979. In the magistrate's judgment, the Secretary was justified in invoking "res judicata" with regard to both the 1979 and 1980 applications and that, in any event, substantial evidence demonstrated that Young did not become disabled until after December 31, 1977. Accordingly, the magistrate affirmed the Secretary's decision.

This appeal followed.

## II.

On appeal, appellant presents a three-pronged attack on the Secretary's decision: (1) she contends that any application of res judicata to her case would violate constitutional due process under the standard set in *Shrader v. Harris,* 631 F.2d 297 (4th Cir.1980); (2) alternatively, she argues that the Secretary did, in fact, reconsider her previous claims on the merits and notwithstanding the magistrate's conclusion, reached a decision unsupported by substantial evidence; and (3) finally, she contends that the application of res judicata in this instance would be contrary to the terms of both the Disability Reform Act and the magistrate's remand order. We find appellant's first two contentions persuasive.

 A certain unfortunate linguistic imprecision has crept into this case. Both the magistrate in his memorandum opinion and the Secretary in his appellate brief have invoked the doctrine of res judicata as a bar to any reconsideration of appellant's 1979 and 1980 applications. It is evident,

however, that the Secretary is not actually relying upon the presumptive conclusiveness of a prior factual determination which is the essence of the res judicata. Rather, the Secretary is actually asserting a form of administrative finality by arguing that there was no "good cause" to reopen Young's 1978 and 1980 applications.[3] Although the concepts of res judicata and administrative finality are undoubtedly related, they, nevertheless, serve different interests and should not be carelessly confused.

The existence of confusion in this appeal is evident from the parties' attempt to apply our decision in *Shrader.* We acknowledged therein that the Secretary's decision not to reconsider a previously denied claim was not generally subject to judicial review unless that denial impaired a constitutional interest. We further recognized, however, that such an interest is implicated when a pro se claimant lacks the mental ability to pursue an appeal of an administrative denial. We concluded, therefore, that when a claimant for benefits has demonstrated that at the time of a previous application he lacked the capacity to assert his rights, the Secretary cannot automatically give res judicata effect to the previous finding of no disability without offending constitutional due process. Instead, we required that a supplemental hearing be held to determine whether the claimant did, in fact, lack competence at the earlier time. *Shrader,* 631 F.2d at 302.

In the instant appeal, Young argues that not only was she disabled due to mental illness in 1977, it was her very disability that prevented her from competently asserting her rights in the earlier applications. The magistrate responded to this argument by concluding that Young's ability to file for reconsideration in 1979 demonstrated her competence and prevented the application of *Shrader*—a position echoed by the Secretary in his brief.

---

**3.** The Regulations promulgated by the Secretary do envision a role for the doctrine of res judicata, *see* 20 C.F.R. § 404.957(c)(1). The requirement of "good cause" is not found in that regulation, however. Instead, it is part of the procedures supporting the application of administrative finality at 20 C.F.R. § 404.988.

To the extent that the Secretary purports to distinguish *Shrader* in this fashion, his argument fails. The claimant in *Shrader* also filed for reconsideration and this Court did not find that fact sufficient to relieve the Secretary of his duty to determine whether claimant was competent at the time of the earlier application. Moreover, even if filing for reconsideration were significant, Young took that step only with regard to her 1979 application. Nothing in the record before us refutes Young's prima facie showing of incompetence in 1980 as raised by the reports of Doctors Ritchie and Diehl.

■ At oral argument, the Secretary suggested that *Shrader* could be further distinguished from the present case in that the *Shrader* claimant sought to contest a previous denial within the four years permitted for reopening for "good cause" by the applicable regulations. *See* 20 C.F.R. § 404.988(b). With that argument, which was apparently not advanced below, we return to the confusion between res judicata and administrative finality. Clearly, our decision in *Shrader* limited the Secretary's ability to invoke res judicata. Administrative finality and its attendant concern with time and cause was not raised and played no part in that decision.[4] The question in this appeal, therefore, is not whether *Shrader* can be distinguished, but whether it applies at all to limit the use of administrative finality in the same fashion that it restricts administrative res judicata. We are persuaded that it does.

■ In the context of social security law, both res judicata and administrative finality accomplish one similar task—they prevent reexamination of the merits of an administrative decision. This may be an acceptable and even salutary result when a claimant has had a full and fair opportunity to establish any statutory entitlement. It offends fundamental fairness, however, to bind a claimant to an adverse ruling who lacks both the mental competency and the legal assistance necessary to contest the initial determination. That is the core of

our decision in *Shrader* and it operates with equal force whether the Secretary relies upon res judicata or some other procedural limitation.

It is, therefore, of no moment that more than four years passed before Young sought to reopen her previous applications. After she presented "prima facie proof that mental illness prevented ... [her] from understanding the procedure necessary to obtain an evidentiary hearing after the denial of ... [her] prior pro se claim," the Secretary could not decline to reconsider the previous claim unless he first conducted an evidentiary hearing and rebutted the prima facie case. *Shrader*, 631 F.2d at 302. We are thus led to the inescapable conclusion that the Secretary could not refuse to reexamine the merits of Young's earlier applications without offending due process.

### III.

■ Ordinarily, a remand would be appropriate at this juncture to allow the Secretary to conduct the supplemental hearing required in *Shrader* and, if the prima facie showing of claimant's incompetency remained unrebutted, to reconsider the claims of disability asserted in 1979 and 1980. In light of the long, convoluted history of this case and the fully developed medical record before us, we conclude, however, that further proceedings are unnecessary. We are satisfied that the extent of Young's statutory entitlement can be finally determined at this time.

The correctness of our decision to reach and resolve the merits of Young's previous applications is buttressed by the fact that, as appellant has contended, the Secretary seems also to have addressed the merits of Young's claims in the last Appeals Council decision. Despite the protestations on appeal that the medical evidence was reviewed simply to determine whether there was "good cause" to reopen appellant's previous applications, a careful reading of the decision reveals an implicit analysis of

---

**4.** That fact is evident from the discussion in *Shrader* which focused on the regulation governing res judicata then in effect, 20 C.F.R. § 404.937(a).

the nature of Young's disability in 1979 and 1980.[5] Since the Secretary has attempted to support his decision in some part by weighing the full range of medical evidence, we are thus free to determine whether that decision is supported by substantial evidence, *e.g. Hayes v. Gardner*, 376 F.2d 517 (4th Cir.1967).

Turning to the record, we conclude that there is substantial evidence to support the Secretary's denial of Young's initial application filed in 1979. While there is ample indication that Young was undergoing serious psychological and emotional problems at that time, there is no conclusive evidence that she was actually disabled on December 30, 1977, the onset date alleged in the application. Doctor Diehl's opinion that Young became disabled "in or about 1978" although suggestive of that fact lacks sufficient certainty to overcome the deference to which the Secretary's contrary interpretation of the evidence is entitled.

The same deference does not apply, however, to Young's 1980 claim for SSI benefits. Despite the strained attempt by the Secretary to posit a conflict in the medical record, we find that the evidence unequivocally demonstrates that Young was disabled by 1980. Doctor Ritchie's 1980 finding of severe restriction in activity is undisputed. Doctor Diehl, whose report on Young's condition was virtually treated as dispositive of her last application, agreed with Doctor Ritchie's diagnosis and subsequently opined that Young's condition had deteriorated to full disability at least by 1978. The Secretary's effort to segment Doctor Diehl's views into an acceptable component and a portion subject to rejection on the wholly conclusory ground that it was "speculative" is unacceptable.

As a trained psychologist, Doctor Diehl identified a mental impairment of a progressive nature and, based on his medical expertise, proffered a reasoned opinion on the past extent of that impairment. Absent contrary medical evidence, the Secretary lacked any basis to reject the competent judgment of a concededly reliable expert.

In summary, we conclude that appellant's mental condition in 1979 and 1980 rendered her unable to pursue her applications for benefits through a full administrative appeal. To the extent, therefore, that the Secretary has purported to refuse to reopen those claims on procedural grounds, whether designated as res judicata or administrative finality, the decision must be overturned. To the extent that the Secretary has actually reconsidered those applications, we find substantial evidence supports the denial of SSI and DIB benefits in 1979, but no basis for denying the 1980 application for SSI.[6]

### IV.

For the foregoing reasons, the order of the magistrate entering judgment in favor of the Secretary is reversed. The case is hereby remanded to the magistrate with directions that judgment be entered granting appellant's application for SSI benefits based upon the 1980 application.

REVERSED AND REMANDED.

5. The Secretary's position here is subject to a serious internal inconsistency. The Secretary has asserted and we accept the fact that Young attempted to obtain reopening more than four years after the denial of her second application. Since the regulation on which the Secretary relies permits reopening for good cause only within the four-year period after the administrative denial, there would have been no reason to determine whether new evidence constituted good cause. The only purpose that the Appeals Council could serve by addressing Doctor Diehl's diagnosis of Young's condition in previous years would be to make a finding of lack of disability on the merits. Indeed, the magistrate implicitly recognized this situation when he held that substantial evidence as well as res judicata supported a denial of benefits.

6. Our conclusion renders unnecessary a consideration of appellant's contentions with regard to the scope of the magistrate's remand or the operation of the Disability Reform Act.