**Ronald K. MARTIN**

v.

**Donna SHALALA, Secretary Health and Human Services.**

No. C–94–282–L.

United States District Court,
D. New Hampshire.

June 29, 1995.

David Broderick, Asst. U.S. Atty., Concord, NH, for Shalala.

Raymond J. Kelly, Manchester, NH, for Martin.

## ORDER

LOUGHLIN, Senior District Judge.

Plaintiff, Ronald Martin, seeks review, pursuant to 42 U.S.C. § 405(g), of a final determination of the Secretary of Health and Human Services (Secretary) that found him eligible for Social Security benefits as of February 1, 1992, but denied him an earlier onset date. Now for the court's consideration is Plaintiff's Motion to Reverse and Remand for Further Hearing (Doc. 7), and Defendant's Motion for Order Affirming the Decision of the Secretary (Doc. 9). For the reasons set forth below, the plaintiff's motion is denied and the defendant's motion is granted.

## BACKGROUND

Ronald Martin was born on March 6, 1939, and is a resident of Merrimack, New Hampshire. Tr. 41–42. He attended high school until the ninth grade, and later on went on to receive the equivalent of a high school education. Tr. 42–43. In September, 1981, while working in construction for New Hampshire Plating Company, the plaintiff injured his back. Tr. 170. The injury occurred when a bar the plaintiff was pulling torqued, throwing him to the ground. *Id.* Because the plaintiff could no longer perform heavy construction work, he received vocational training in the electronics field at Sylvania Tech. *Id.* He was later employed as a foreman for an electroplating manufacturing plant, and then as a computer technician for Calcomp/Sanders. Tr. 136. While working at Calcomp, the plaintiff suffered another back injury on August 29, 1988. Tr. 89. The plaintiff has not worked since that day.

After the plaintiff first injured his back in 1981, he was treated by Dr. Louis Candito. Tr. 163–171. The plaintiff saw Dr. Candito periodically from 1981–1983, 1987–1988, and in 1991. *Id.* Dr. Candito diagnosed chronic lower back pain and myofascitis, and prescribed treatment with a TENS unit and physical therapy. *Id.* Later, the plaintiff began treatment on June 2, 1988 with Dr. Berube, D.Sc.D.C. Tr. 253. Treatment by Dr. Berube consisted of Chiropractic Adjustment and Neuro-muscular repatterning. *Id.* In a letter written on September 8, 1988, Dr. Berube suggested that the plaintiff be excused from work duties that would involve prolonged sitting, standing, twisting, stretching and lifting for a period of three months. *Id.* The plaintiff was also treated by a chiro-

practor, Dr. Roxanne Caron in January and February of 1991. Tr. 271.

The plaintiff was referred to Dr. Khawaja Rahman after reporting symptoms of a neurological disorder, and was examined on June 24, 1991. Tr. 170. Dr. Rahman reported an unremarkable clinical examination of the plaintiff, noting that higher cognitive functions were intact. A cranial MRI study was "unremarkable," and EMG and nerve conduction studies showed normal test results. Tr. 193–94.

The plaintiff saw Dr. Kleeman for his back problem on August 19, 1992. Tr. 198. While Dr. Kleeman noted some mild degenerative disc changes, he felt that the plaintiff's significant problem was psychiatric in nature, and not physical. Tr. 199. Dr. Kleeman referred the plaintiff to a psychiatrist. *Id.* The next day, the plaintiff was seen by Dr. Sohn. Tr. 201. Dr. Sohn diagnosed plaintiff as suffering from recurrent major depression with psychotic features. Tr. 202.

The plaintiff initially applied for disability insurance benefits on March 15, 1989. Tr. 222–24. On his application for benefits, the plaintiff listed August 26, 1988 as the date of injury, and listed his disabling condition as a back injury. Tr. 234. His claim was denied on April 10, 1989. Tr. 232. The Secretary's rationale given for this determination was that the plaintiff's condition was not severe enough to keep him from performing light work. Tr. 226. The plaintiff did not appeal this denial of benefits. Tr. 14.

The plaintiff applied for benefits again on August 12, 1992. Tr. 86–88. On this second application, the plaintiff again listed August 26, 1988, as the date of onset of his disabling condition.[1] Tr. 86. The plaintiff listed his disabling injury as a back condition and depression. Tr. 132. The Secretary determined from the medical evidence that the combination of the plaintiff's back problems and depression did render the plaintiff disabled; however, the Secretary found the date of onset was February 1, 1992, and not August 26, 1988, as alleged by the plaintiff. Tr. 91. The plaintiff timely requested reconsid-

eration of the determination concerning the date of onset. Tr. 115. The determination was reviewed by a different examiner and a different doctor, and the February 1, 1992 date of onset was affirmed by the Secretary. Tr. 128.

The plaintiff then requested a hearing by an administrative law judge. Tr. 129. A hearing was conducted on October 7, 1993 in Manchester, N.H. by Administrative Law Judge (ALJ) Robert S. Klingebiel. After considering the testimony, written statements from family and friends, medical reports, and residual functional capacity assessments, the ALJ found that the plaintiff was not disabled within the meaning of the Social Security Act at any time prior to February 1, 1992. Tr. 15. On May 11, 1994, the Appeals Council denied plaintiff's request for review of the ALJ's decision, thereby rendering the Secretary's decision final and making it subject to judicial review. Tr. 4–5.

The plaintiff now alleges in the instant appeal that the decision of the Secretary, through the ALJ, regarding his onset date of disability is not supported by substantial evidence. Additionally, the plaintiff alleges that new and material evidence submitted regarding the plaintiff's depression requires a remand to determine how the plaintiff's depression might have impaired him at the time of his previous denial in April, 1989.

## DISCUSSION

An individual seeking social security disability benefits will be considered disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A) (Supp. V 1981); 42 U.S.C. § 1382c(a)(3)(A) (1976); *See Faford v. Shalala,* 856 F.Supp. 13 (D.Mass. 1994). The Secretary of Health and Human Services will find a claimant disabled only if the claimant's

---

[1]. The plaintiff later amended this second application to change the onset date from August 26, 1988 to August 29, 1988. Tr. 89.

physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (1994).

■ The scheme of the Act places a very heavy burden on the claimant to establish the existence of a disabling impairment. *Bowen v. Yuckert,* 482 U.S. 137, 146–47, 107 S.Ct. 2287, 2293–94, 96 L.Ed.2d 119 (1987); *Santiago v. Secretary of HHS,* 944 F.2d 1, 5 (1st Cir.1991). To meet this burden, the claimant must prove that his impairment prevents him from performing his former type of work. *Gray v. Heckler,* 760 F.2d 369, 371 (1st Cir.1985)(citing *Goodermote v. Secretary,* 690 F.2d 5, 7 (1st Cir.1982)). The claimant is not required to establish a doubt-free claim; the initial burden is satisfied by the usual civil standard, a "preponderance of the evidence." *See Paone v. Schweiker,* 530 F.Supp. 808, 810–11 (D.Mass.1982); *see also* 1 Unemployment Insurance Reporter (CCH) 112, 679 (April 15, 1985). Further, the claimant must show a "medically determinable" impairment, and only in a rare case can this be shown without medical evidence. *Thompson v. Califano,* 556 F.2d 616, 618 (1st Cir. 1977) (citing 42 U.S.C. § 423(d)(1)(A)); *Ramirez v. Secretary of Health, Education and Welfare,* 528 F.2d 902, 903 (1st Cir.1976).

■ In reviewing decisions in such cases, district courts do not make *de novo* determinations. *Lizotte v. Secretary of Health and Human Services,* 654 F.2d 127, 128 (1st Cir. 1981). A finding by the Secretary that a claimant has not shown disability is conclusive if supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Ortiz v. Secretary of HHS,* 955 F.2d 765, 769 (1st Cir. 1991). Substantial evidence is:

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216–17, 83 L.Ed. 126 (1938). "[I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300, 59 S.Ct. 501, 505, 83 L.Ed. 660 (1939). This is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.

*Consolo v. Federal Maritime Com.,* 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966) (citations omitted).

■ In reviewing the record for substantial evidence, "[i]ssues of credibility and the drawing of permissible inference from evidentiary facts are the prime responsibility of the Secretary." *Rodriguez v. Secretary of Health and Human Services,* 647 F.2d 218, 222 (1st Cir.1981) (quoting *Rodriguez v. Celebrezze,* 349 F.2d 494, 496 (1st Cir.1965)).

Turning attention to the case at hand, the plaintiff claims that the decision of the ALJ, finding that February 1, 1992 is the date of onset of his mental impairment, is not supported by substantial evidence. The plaintiff contends that because he had a non-exertional impairment (depression) that affected his work capacity, the ALJ's use of the grid system to determine disability was in violation of Grid Rule § 200.00(e)(2). In the alternative, the plaintiff contends that even if the plaintiff's mental disorder was not by itself sufficient to render him disabled prior to February 1, 1992, the ALJ should have considered the combined effect of his physical and mental impairments on the issue of disability.

## I. SUBSTANTIAL EVIDENCE

■ Upon review, the court is content that the ALJ's decision that the plaintiff was not disabled prior to February 1, 1992, due to a mental impairment is based upon substantial evidence. Apposite to this conclusion, the plaintiff had the burden of establishing by credible evidence that his mental impairment was of a disabling severity prior to

February 1, 1992. *Deblois v. Secretary of Health and Human Services*, 686 F.2d 76, 79 (1st Cir.1982). Further, it is insufficient for the claimant to establish that the mental impairment had its roots during a particular time period. *Deblois*, 686 F.2d at 79. In the plaintiff's case, the ALJ found that "although the claimant may have experienced some reaction to his financial situation and his physical condition, the evidence shows that he did not require any treatment for any psychological or psychiatric impairment until 1992." Tr. 18. The ALJ also attached significance to the fact that the report of June 24, 1991 by Dr. Rahman, a neurologist, described the plaintiff's higher cognitive functions as "intact." Tr. 16.

It was not until August 19, 1992, that the plaintiff exhibited a mental impairment, which led him to psychological evaluation. Tr. 17. The ALJ found a letter written by Dr. Caron (the chiropractor who treated the plaintiff in January and February of 1991) stating that the plaintiff was "depressed" during the treatment to be unconvincing. Tr. 19. The ALJ specifically noted that Dr. Caron only treated the plaintiff four times during an approximately one month period, and such infrequent treatment is not and was not reflective of the plaintiff's condition for the period under adjudication. *Id.* Also, Dr. Caron's opinions on the plaintiff's mental status were "outside of her [chiropractor] purview and expertise." *Id.*

Finally, the ALJ justifiably did not find the testimonials from family and associates of the plaintiff concerning the plaintiff's condition from 1988 to February, 1992 to be persuasive. *See* Tr. 211–20. Succinctly, the letters submitted at the hearing are vague as to time periods and fail to establish requisite severity. Therefore, due to the "paucity of medical evidence" of mental impairment prior to February 1, 1992, the finding of the ALJ is supported by substantial evidence. *See Deblois*, 686 F.2d at 79.

## A. CONSULTATIVE EXAMINATION

■ As further support for his request to have the case remanded, the plaintiff contends that because the ALJ admitted he "had almost no medical information relating to Plaintiff's mental impairment" for the time period in question, the ALJ erred in not ordering a consultative examination to determine the plaintiff's mental condition for the period in question. Specifically, plaintiff asserts such a misstep of the ALJ was in violation of 20 C.F.R. § 404.1519a. Plaintiff's Brief at 14.

20 C.F.R. § 404.1519a requires the Secretary to purchase a consultative examination in certain situations. In evaluating whether a consultative examination was required in the case in issue, the court will analyze the ALJ's decision of the February 1, 1992 onset date in accordance with Social Security Ruling 83–20, discussed below.

It is axiomatic that entitlement to disability benefits begins with the first month covered by one's application in which one meets all the other requirements for entitlement. 20 C.F.R. § 404.316(a). Correctly determining the onset date of disability is critical for two reasons; it may affect the period for which the individual can be paid and may even be determinative of whether an individual is entitled to or eligible for benefits. Social Security Ruling 83–20, 1983 WL 31249 *1. Because it is essential that the onset date be correctly established, Social Security Ruling (SSR) 83–20 [2] was promulgated to prescribe the policy and procedure by which the Secretary should determine the onset of disability. *Id.* at *1. For disabilities of traumatic origin, the onset date is easily established by the date of the injury. *Id.* at *2. For injuries that are not of traumatic origin, three factors are to be considered in determining the onset date: the applicant's allegations, work history, and medical or other evidence. *Id.* at *3.

SSR 83–20 recognizes that with slowly progressive impairments, including mental impairments, that "it is sometimes impossible to obtain medical evidence establishing the precise date an impairment becomes disabling." *Id.* In some cases, it may be possible

---

**2.** Social Security Rulings are "binding on all components of the Administration. These rulings represent precedent final opinions and orders and statements of policy and interpretations that have been adopted by the Administration." 20 C.F.R. § 422.406(b)(1) (1994).

to reasonably infer that the onset of a disabling impairment occurred some time prior to the date of the first recorded examination. *Id.* How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. *Id.* SSR 83–20 requires this judgment, however, must have a legitimate medical basis. *Id.*

The court notes one case that sheds considerable light on the issue of when an ALJ should order a consultative examination. In *Field v. Shalala,* No. 93–289–B, slip op. 1994 WL 485781 (D.N.H. Aug. 30, 1994), the ALJ determined that March 19, 1991, the date the plaintiff began receiving treatment for the plaintiff's condition, was the date of onset of the plaintiff's panic disorder. Because the plaintiff's disability insured status had expired on March 31, 1990, the plaintiff was not eligible for benefits. The ALJ adopted the diagnosis date as the onset date based on the lack of objective medical evidence prior to March 19, 1991 documenting the plaintiff's panic disorder, and the fact that the plaintiff did not mention panic attacks when examined in 1983 and 1989. While the court noted that the ALJ failed to explicitly rely on SSR 83–20, that in itself did not require a remand. *Id.* at 3 (citing *Lichter v. Bowen,* 814 F.2d 430, 436 (7th Cir.1987)). A remand was ordered because the ALJ's reasoning failed to comport with the *substantive* requirements of SSR 83–20, that judgments must have a legitimate medical basis. The court stated that from the evidence, the ALJ could not have determined the onset of mental impairment without the assistance of a medical advisor.

In the instant case, the plaintiff is correct when he states that if he "was diagnosed with a serious mental disorder in [August] 1992, ... the date of onset was almost certainly sometime earlier." Plaintiff's Brief at 12. However, after analyzing the facts of the case at bar in light of SSR 83–20, and *Field,* this court finds that the ALJ acted correctly in determining the date of onset because his decision did have a legitimate medical basis. Moreover, this case is distinguished from Field in that the date of February 1, 1992, six months prior to diagnosis, was assessed by Nicholas Kalfas, PhD as a reasonable

projection of onset. Tr. 90, 102. This date was also affirmed by Udo Rauter, PhD. Tr. 119. Here, the plaintiff fails to acknowledge the fact that the Secretary in fact did allow for a retroactive period of six months, and that it was established or assented to by two psychologists. Therefore, because the ALJ relied on the opinions of two professionals in the field, this court finds that he complied with the substantive requirements of SSR 83–20 in that his decision had a legitimate medical basis. Thus, the ALJ did not err in failing to order a consultative exam.

## B. ALJ'S USE OF GRIDS

■ Plaintiff next alleges error in the ALJ's use of the Grids where there was a nonexertional impairment. Pursuant to Social Security regulations, when a claimant has a severe mental impairment which affects his or her ability to perform nonexertional activities, the Grids should not be used exclusively to determine whether the claimant is disabled. 20 C.F.R. § 416.969a(c)(2). With respect to plaintiff's contention that the ALJ erred in using the Grids, this court has found that the ALJ's finding that the plaintiff did not suffer a severe mental impairment is supported by substantial evidence. In so concluding, it was appropriate for the ALJ to rely on the Grids in determining the disability of the plaintiff. *See Oliveras v. Shalala,* 870 F.Supp. 411, 414 (D.Mass.1994).

## C. COMBINATION OF IMPAIRMENTS

■ The plaintiff next contends that even if his mental impairment alone was not sufficient to render him disabled, the ALJ should have considered its effect in combination with the back pain. 20 C.F.R. § 404.1523 recognizes that multiple impairments existing together can be of sufficient severity to render one disabled. However, the combined effect of the impairments must meet a twelve month durational period. In the case at bar, the ALJ found that "at no time prior to February 1, 1992 did [plaintiff] have an impairment or combination of impairments which lasted from 12 months or more from his alleged onset which would have further interfered with his ability to perform work activity." Tr. 18. Again, as this court has

held that the ALJ's decision regarding the onset of mental impairment is supported by substantial evidence, the ALJ did not err in failing to consider the combination of mental impairment and back injury in his analysis.

## II. NEW AND MATERIAL EVIDENCE CONCERNING 1988 APPLICATION REOPENING

Plaintiff contends that the Secretary's decision, through the ALJ, not to reopen the first application was improper under regulations and case law. Succinctly, the plaintiff claims error because his reopening request was made within the four year time frame, and that new and material evidence in the form of medical reports from Drs. Sohn and Kleeman were submitted, along with the testimony of Ms. Ouellette. Plaintiff claims the evidence is "new and material since [it] deals with the depression and paranoia that [plaintiff] suffered during the relevant time period of August, 1988 through January 31, 1992." Plaintiff's Brief at 15.

As a threshold distinction, it is important to note here that plaintiff is claiming that the proffered evidence is new and material to the first application submitted in 1989.

As discussed previously, the plaintiff did not request a redetermination of the denial of his first application in 1989. As a general rule, if one does not request further review within the stated time period, the individual loses that right and the determination or decision becomes final. 20 C.F.R. § 404.987(a). However, there is a provision allowing for a determination or decision to be reopened within four years of the date of the notice of the initial determination provided there is good cause. 20 C.F.R. § 404.988(b). Good cause for reopening can be satisfied by the furnishing of new and material evidence. 20 C.F.R. § 404.989(a)(1). In the case at

bar, the ALJ found that after examining the medical evidence there existed no new and material evidence that reflected good cause for reopening the prior application and denial. Tr. 14.

The defendant is correct in the assertion that absent a colorable constitutional claim, courts do not have jurisdiction to review a decision of the Secretary not to reopen a claim. *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *Dvareckas v. Secretary of Health and Human Services,* 804 F.2d 770, 772 (1st Cir.1986). The plaintiff does not specifically address this issue; however the plaintiff does set forth several constitutional claims on his behalf.

### A. DUE PROCESS

Plaintiff first contends that if a claimant suffered from a mental impairment at the time an application for benefits was denied or during the appeal period, then the claimant's constitutional right to due process requires the tolling or the suspension of the Social Security Administration's right to rely upon the doctrines of administrative finality and administrative res judicata as a bar to reopening and revising the prior application. Plaintiff's Brief at 15–16.[3]

The plaintiff cites *Young,* 858 F.2d at 955, in which the court held:

It offends fundamental fairness to bind a claimant to an adverse ruling who lacks both the mental competency and the legal assistance necessary to contest the initial determination. This is the core of our decision in *Schrader* [*v. Harris,* 631 F.2d 297 (4th Cir.1980)], and it operates with equal force whether the Secretary relies upon res judicata or some other procedural limitation.

The plaintiff also cites SSR 91–5(p), which provides that if a claimant presents evidence

3. Plaintiff confuses the issue when he states that res judicata was used by the ALJ. Tr. 16. "Although the concepts of res judicata and administrative finality are undoubtedly related, they, nevertheless, serve different interests and should not be carelessly confused." *Young v. Bowen,* 858 F.2d 951, 954. Res judicata prevents further examination of an application because of a prior factual determination. *Id.* Administrative finali-

ty also prevents further examination of the merits of an application, but not because of a prior factual determination. *Id.* at 955. In the case at bar, the ALJ asserted a form of administrative finality by finding there was no good cause to reopen plaintiff's 1989 application. *See Young,* 858 F.2d at 954. Therefore, the court will not address plaintiff's arguments as to why res judicata should not be used. *See* Tr. 17–19.

**544**

that mental incapacity prevented him or her from requesting review of an administrative action, then the time limits in the reopening regulations do not apply. *Id.* at 51. This ruling provides that a claimant will have established mental incapacity when the evidence establishes that the he or she lacked the mental capacity to understand the procedures for requesting review. *Id.* The plaintiff alleges error in the failure of the ALJ to hold a hearing to determine how the plaintiff's depression might have impaired him at the time of his denial in April, 1989. Plaintiff's Brief at 17. The defendant contends that because the ALJ found no evidence of mental impairment prior to February 1, 1992, then no hearing was necessary. Defendant's Brief at 16.

This court finds the defendant's argument to be persuasive. Where this court has found the ALJ's decision regarding the plaintiff's mental status is supported by substantial evidence, it logically follows that the plaintiff did not make a prima facie case that mental impairment in April, 1989, prevented him from understanding the procedure necessary to request further review of the 1989 application. Therefore, the ALJ did not violate the plaintiff's rights to due process or the policy of SSR 91–5(p) in failing to hold a hearing. *Cf. Young,* 858 F.2d at 955.

## B.  DEFECTIVE NOTICE

The plaintiff's second basis for requesting reopening of the 1989 application concerns the Secretary's defective notice of decision. Plaintiff's Brief at 19. The plaintiff avers that the notice was misleading, and as such a violation of his right to due process because it did not properly advise him of the consequences of not appealing the original determination.[4] *Id.* The plaintiff cites, *inter alia, Gonzalez v. Sullivan,* 914 F.2d 1197 (9th Cir.1990). The notice involved in that case informed the claimants that they must request reconsideration within 60 days, or they could file another application at any time. *Id.* at 1203. Where the notice didn't clearly

indicate that the determination was final if no request for reconsideration was made, it was held to be misleading. *Id.*

In plaintiff's circumstance, the actual language of his 1989 denial notice states the following:

If you do not request reconsideration within the 60–day time limit, you still have the right to file another application at any time. A new application is not the same as an appeal of this determination.

Tr. at 232.

Upon review of the notice in question, the court finds that the notice did inform the plaintiff that there was a difference between appealing the determination and reapplying, and as such was not misleading.

To recapitulate, with regard to the issue of reopening, the court finds no colorable constitutional claim that would provide jurisdiction to review the decision of the Secretary not to reopen the plaintiff's 1989 claim. Thus, reopening may properly be denied on this finding. However, even in the absence of a constitutional issue, for the sake of discussion, the court will consider whether the proffered evidence is new and material.

Evidence will be considered new if it is "meaningful—neither pleonastic nor irrelevant to the basis for the earlier decision." *Evangelista v. Secretary of Health and Human Services,* 826 F.2d 136, 139–40 (1st Cir. 1987). To be material, "the Secretary's decision might reasonably have been different had the new evidence been before him *at the time of the decision." Falu v. Secretary of Health and Human Services,* 703 F.2d 24, 27 (1st Cir.1983) (emphasis added).

In the case at bar, the plaintiff's proffered evidence is neither new nor material. Fundamentally, the evidence is not relevant to the basis of the 1989 denial since it could not have been before the Secretary at that time. The proffered evidence *post-dates* the prior claim of March 15, 1989. The

4. Because the denial in this case predates July 1, 1991, the plaintiff does not benefit from 42 U.S.C. § 405(b)(3)(B), which directed the Secretary to clarify the difference between requesting reconsideration and reapplying. The amendment expressly provided that it applied only to notices of determinations made on or after July, 1991. Therefore, the provision has no retroactive effect and is not applicable to this case.

reports of Drs. Kleeman and Sohn have bearing only on the plaintiff's mental status in August of 1992, which is approximately three years after the first claim. As for the testimony of the plaintiff's roommate Ms. Ouellette, who had been out of touch with the plaintiff for some time, her testimony as to the plaintiff's mental status is relevant only to the time when she reestablished contact with the plaintiff. Ms. Ouellette testified that she called him in either December or January of 1991. Tr. 71. She did not see him in person until mid-February of 1991. Tr. 72. She moved into the plaintiff's house near the end of March of 1991. Tr. 74. It was her testimony that she did not start noticing strange behavior on the part of the plaintiff until three or four months after she moved in. Tr. 80. Therefore, her testimony as well has no bearing on the plaintiff's mental status at the time of the first application, and as such is neither new nor material.

## CONCLUSION

For the reasons set forth above, the court concludes that the decision of the ALJ, finding that the claimant was not disabled prior to February 11, 1992 is supported by substantial evidence. Additionally, it was not error for the ALJ to refuse to reopen the plaintiff's 1989 application. The court denies Plaintiff's Motion to Reverse and Remand for Further Hearing (Doc. 7) and grants Defendant's Motion for Order Affirming the Decision of the Secretary (Doc. 9).