**Doris AGNESE, Plaintiff,**

v.

**Shirly S. CHATER, Commissioner of Social Security, Defendant.**

No. CV 94–4418.

United States District Court, E.D. New York.

Aug. 13, 1996.

Grey & Grey by John K. Hamberger, Farmingdale, New York, for plaintiff.

Zachary W. Carter, United States Attorney by Nancy A. Miller, Assistant U.S. Attorney, Brooklyn, New York, for defendant.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

The above-referenced action was brought by plaintiff Doris Agnese ("Agnese") for review of the decision of the Commissioner of Social Security (the "Commissioner") denying disability insurance benefits under the Social Security Act (the "Act"). In February 1992, Agnese filed an application for disability insurance benefits; that application was denied initially and on reconsideration. Upon Agnese's request, a hearing was held before an administrative law judge ("ALJ") on October 20, 1992. The ALJ found that Agnese was not disabled during the relevant period of time. However, the Appeals Council vacated the ALJ's ruling and remanded with instructions to consider additional evidence. A supplemental hearing was held on January 11, 1994, after which the ALJ ruled again that Agnese was not disabled during the relevant period. The Appeals Council then denied Agnese's request for review, making the ALJ's decision the final decision of the Commissioner. After Agnese filed this action, the Commissioner moved for judgment on the pleadings affirming her final decision; Agnese opposed the Commissioner's motion in the form of a cross-motion for judgment on the pleadings. Those motions are presently before the Court.

## I. BACKGROUND

Agnese alleges that since October 13, 1972 she has been disabled as the result of panic attacks and agoraphobia (generally understood as the fear of open or public places). The Commissioner determined that she did not present evidence sufficient to prove that she suffered from a disabling impairment prior to December 31, 1973, the date Agnese last met the Act's insured-status requirements.

According to her testimony at the hearings before the ALJ, Agnese was born January 28, 1942, attended one year of college, was married June 30, 1968, and has four children (born 1969, 1970, 1974, and 1975). She described her panic attacks as a shortness of breath and heart palpitations, accompanied by a severe disorientation. "I feel like I'm losing control totally," she testified. Record on Appeal ("R.") at 205. She explained that the attacks usually last for thirty to forty-five minutes, but that she does not "feel right" for the remainder of the day. R. at 206. She has an attack at least once a day. R. at 207.

Agnese recalled that her first panic attack occurred on October 13, 1972, when she was having lunch with a neighbor. R. at 206. She testified that after the first attack she saw Dr. Samuel Feinberg, her family physician, who prescribed Valium. R. at 206–207. She testified that she was treated by various psychologists for short periods of time between 1972 and 1977, and by Jeanne Carlson, a psychotherapist, from 1977 to 1982, and that since 1986 she has seen Dr. Julian Herskowitz once or twice a week. R. at 212–219. Agnese testified that she did not seek treatment on a regular basis between 1982 and 1986 because she could not "find anyone that could identify what [she] was going through and help [her] any more than [she] was being helped already." R. at 217. She recalled having at least two or three panic attacks a day during that period. R. at 217.

Dr. Herskowitz indicated, in a report dated March 16, 1992, that he had been treating Agnese since February 1987 and that she suffered from "[p]anic disorder with agoraphobia dating back to 1972 when [she] experienced terrifying panic episodes with resultant fears of going crazy or dying." R. at 90. According to Dr. Herskowitz's report, Agnese had seen Dr. Feinberg after her first panic attack, but Agnese's condition worsened thereafter "to the point where she could not walk from house to mailbox." R. at 90. Dr. Herskowitz also indicated in the report that Agnese could not drive or travel anywhere without company, that she was able to function "only in the house," and that she was capable of enjoying social visits only "in [a] safe area with safe people." R. at 90–92. In a second report, dated September 14,

1992, Dr. Herskowitz stated that Agnese was "unable to sustain gainful employment due to her severe panic disorder with agoraphobia." R. at 117. In a letter to Agnese's attorney, dated January 11, 1994, Dr. Herskowitz indicated that Agnese was still under his care. R. at 156.

A letter dated August 7, 1992 indicates that Dr. Feinberg's patient files are not available. R. at 113. Dr. Feinberg is deceased.

Ms. Carlson, the psychotherapist, indicated that she had treated Agnese weekly from Autumn 1977 to Autumn 1982. R. at 95, 114. Ms. Carlson diagnosed Agnese's condition as agitated depression, anxiety, and extreme agoraphobia. R. at 95, 114. She indicated that during the period of treatment Agnese was "basically confined to her home" and was unable to travel alone. Ms. Carlson stated that the treatment ended because Agnese's husband could no longer drive her to the office and Agnese was incapable of undertaking the trip, which involved a train ride and a two-block walk, without her husband's assistance. R. at 114. It was Carlson's opinion that Agnese was "totally disabled from all work" during the period she treated her. R. at 114.

Other medical evidence includes the treatment notes of Dr. Philip Riggio, who saw Agnese as her general practitioner from February 1981 to July 1992. In her first visit to Dr. Riggio, Agnese complained of chest pain and tightness, and indicated that she had been undergoing psychotherapy for "several years" for a panic disorder. R. at 102. Dr. Riggio's chart shows no further discussion with Agnese about panic attacks until February 1987, at which time Dr. Riggio prescribed Xanax. R. at 100.

The record includes testimony from lay witnesses as well. By declaration dated March 10, 1993, Marie Evans testified that she had known Agnese as a neighbor and a friend since mid–1972, that she was with Agnese in October 1972 when Agnese suffered her first panic attack, and that since that time Agnese has suffered attacks on a regular basis and has been "unable to do basic daily activities." R. at 138–139. Agnese's husband, Gennaro Agnese, testified at the hearing before the ALJ that he received a "frantic" telephone call from a neighbor in Fall 1972 and that the neighbor told him that his wife "had collapsed." R. at 225. After that day, Mr. Agnese testified, "I didn't know what to expect [from her].... [S]he wasn't functioning the way she did [before]...." R. at 228.

The record indicates that Agnese has worked during three periods of time. From 1960 to 1968, she performed secretarial work for three separate employers. From September 1990 to April 6, 1991, she worked twenty hours a week in a law office as an assistant to a secretary. Agnese indicated that she left the latter job because her "employer hired someone with more legal experience." R. at 82. The secretary who hired her stated by declaration that Agnese was fired, and was "unable to concentrate to perform even the most simple tasks." R. at 119. The secretary added, "I would have to explain things 20 times and she still would not be able to do the work." R. at 119. Finally, for three weeks in 1993 Agnese worked out of her home "[d]oing telemarketing" for a cemetery. R. at 204.

## II. *DISCUSSION*

■ The Court reviews the Commissioner's final decision to determine whether it is supported by "substantial evidence." 42 U.S.C. § 405(g); *see Jones v. Sullivan,* 949 F.2d 57, 59 (2d Cir.1991). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

In order to establish an entitlement to disability benefits under the Act, a claimant must meet the insured-status requirements of 42 U.S.C. § 423(c), and the disability requirements of 42 U.S.C. § 423(d). A person is disabled under the Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42

U.S.C. § 423(d)(1)(A). A person is not disabled under the Act unless his impairment is so severe "that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A). The existence of a disabling impairment can be demonstrated only by "medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

The Commissioner has promulgated regulations establishing a framework in which to evaluate disability claims. *See* 20 C.F.R. §§ 404.1520, 416.920. A five-step analysis is required:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform the past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

*Berry v. Schweiker,* 675 F.2d 464, 467 (2d Cir.1982) (per curiam).

In the instant case, Agnese last met the insured-status requirements on December 31, 1973. The ALJ determined that she did not present evidence sufficient to prove that she suffered from a disabling impairment prior to December 31, 1973. Indeed, putting aside lay witness testimony, including Agnese's, the only *medical* evidence that Agnese was disabled prior to December 31, 1973, is Dr. Herskowitz's diagnosis that Agnese suffered from a panic disorder with agoraphobia dating back to 1972. Dr. Herskowitz, however, did not start treating Agnese until 1987. His report refers to Dr. Feinberg's treatment of Agnese in 1972, after her first panic attack, but Dr. Feinberg's records were neither available to Dr. Herskowitz nor were evidence in this case. Ms. Carlson's assessment that Agnese had a disabling condition, while based on five years of treatment, dates back only to late 1977.

■ The Commissioner contends that Dr. Herskowitz's identification of 1972 as the onset period is not "medically acceptable evidence" because Dr. Herskowitz neither treated Agnese in 1972 nor examined records of another physician who had. R. at 25. A diagnosis of a claimant's condition may properly be made even several years after the onset of an impairment, so long as it is " 'predicated upon a medically accepted clinical diagnostic technique,' and [when] 'considered in light of the entire record, it establishes the existence of a physical impairment prior to [the relevant date].' " *Dousewicz v. Harris,* 646 F.2d 771, 774 (2d Cir.1981) (quoting *Stark v. Weinberger,* 497 F.2d 1092, 1097 (7th Cir.1974)) (other internal quotes omitted); *see Rivera v. Sullivan,* 923 F.2d 964, 968, 968 n. 5 (2d Cir.1991).

In *Stark,* the claimant had to prove that she suffered from a disability prior to 1951. Her evidence consisted of the report of a physician who treated her after 1957, which did not indicate an onset date, and the affidavit of a physician who, after stating that he had followed her condition "for many years," concluded, based on the statements of the claimant and other laypersons, that her condition was present "in and from the late 1930's." *Stark,* 497 F.2d at 1097. Although the claimant testified that she had been treated by three physicians in the late 1940's and early 1950's, she was unable to produce any of their medical records (she explained that her files had been destroyed in a flood, two of the three physicians were deceased, and she could not locate the other). As such,

the only medical evidence supporting an onset date prior to 1951 was one physician's retrospective opinion, which was based primarily on the claimant's own statements and not on any medical records from the relevant period. Nonetheless, the court found the retrospective opinion acceptable. Influenced by the fact that the Secretary of Social Security offered no medical evidence contradicting the retrospective opinion, the court stated that "[a] medical opinion does not become unacceptable ... simply because it is based upon a claimant's symptomology." *Id.*

■ Dr. Herskowitz's diagnosis was based on his weekly treatment of Agnese beginning in 1987. His conclusion that her condition initiated in 1972 was based on Agnese's symptomology and her answers to his questions. The Commissioner did not offer evidence contradicting Dr. Herskowitz's diagnosis. The physician who, according to Agnese and Dr. Herskowitz, treated Agnese during the relevant period, is deceased and his records are unavailable. Ms. Carlson's diagnosis is consistent with Dr. Herskowitz's, save her failure to estimate an onset date. Based on these facts, the Court finds Dr. Herskowitz's conclusion to be medically acceptable. In addition, viewed in light of the entire record, Dr. Herskowitz's diagnosis establishes the existence of a disability prior to December 31, 1973. The testimony of Agnese, her husband, and her neighbors are consistent with Dr. Herskowitz's findings, as are the diagnosis of Ms. Carlson and the notes of Dr. Riggio. There is no evidence in the record that contradicts Dr. Herskowitz's conclusion.

Social Security Ruling 83-20 instructs that "the [onset] date alleged by the [claimant] should be used if it is consistent with all the evidence available." The Commissioner did not use Agnese's alleged onset date because she determined that it was not supported by medically acceptable evidence. R. at 25. The Court disagrees, and concludes that the alleged onset date was not only supported by medical evidence, but was consistent with all evidence available in this case. Accordingly, the Court determines that the Commissioner's ruling is not supported by substantial evidence.

The Court finds that the only conclusion permitted by the evidence is that Agnese suffers from a severe impairment, which significantly limits her physical or mental ability to do basic work activities, and that she has suffered from that impairment since 1972. Nonetheless, the following questions were left unanswered by the Commissioner: (1) whether Agnese's severe impairment is one that is listed in Appendix 1 of the regulations; and, if not, (2) whether, despite her severe impairment, Agnese has the residual functional capacity to perform her past work; and (3) whether there is other work which Agnese could perform. Findings on these issues must be made on remand.

### III. *CONCLUSION*

For the above reasons, the Commissioner's motion is denied and Agnese's cross-motion is denied. This case is remanded for findings consistent with this Memorandum and Order. The Clerk of the Court is directed to stay and administratively close this case, to be reopened by letter to the Court from either party, if necessary, after findings are made on remand.

SO ORDERED.