Ronald D. RICCI

v.

**Kenneth S. APFEL, Commissioner of the Social Security Administration.**

No. CIV. A. 00–2253.

United States District Court,
E.D. Pennsylvania.

March 30, 2001.

Robert Morris Cohen, Wyncote, PA, for Plaintiff.

Rafael Melendez, William B. Reeser, Office of Gen. Counsel, Philadelphia, PA, for Defendant.

### MEMORANDUM AND ORDER

BECHTLE, District Judge.

Presently before the court are plaintiff Ronald D. Ricci's ("Plaintiff") and defendant Kenneth S. Apfel, Commissioner of the Social Security Administration's ("Commissioner") cross-motions for summary judgment, and the Report and Recommendation of United States Magistrate Judge Carol Sandra Moore Wells ("Magistrate Judge"). For the reasons set forth below, the court will grant the Commissioner's motion for summary judgment, and deny Plaintiff's motion.

### I. BACKGROUND

This is a judicial review of the Commissioner's final decision denying Plaintiff's claim for Adult Child's Disability Insurance Benefits ("Disabled Child's Benefits") under Title II of the Social Security Act,

42 U.S.C. §§ 401–433 (the "Act"). At issue is whether substantial evidence supports the Commissioner's decision that Plaintiff was not disabled, as defined by the Act, prior to his twenty-second birthday. 20 C.F.R. 404.350(a).

Ronald D. Ricci was born on November 11, 1955. (R. 64.) On June 9, 1973, he graduated from St. Joseph's Preparatory School. (R. 165.) Plaintiff then completed three semesters at St. Joseph's University, withdrawing on September 2, 1975. (R. 166.) After leaving college, Plaintiff lived with his brother in Colorado for six months before returning to Pennsylvania. (R. 145.) Plaintiff returned to St. Joseph's University in 1984 and continued on a part-time basis through the summer of 1988. (R. 166–68.) Plaintiff has minimal work experience. Since 1974 or 1975, he has worked an hour or two each day in his mother's grocery store. (R. 84, 86 & 91.)

In November 1994, Plaintiff applied for, and was found eligible to receive, Supplemental Security Income ("SSI"). (R. 29; Pl.'s Mem. of Law in Supp. of Mot. for Summ. J. at 1.)

On November 6, 1995, Plaintiff applied for Disabled Child's Benefits under the Social Security Act based on his deceased father's employment record. (R. 64.) Plaintiff alleged that he was disabled since 1973.[1] (R. 80.) Plaintiff asserts that he suffers from schizophrenia, sacroilitis, and Crohn's disease. (R. 80.) However, the record shows that although Plaintiff is currently treated for other impairments, the only impairment that he alleges to have an onset date before 1977 is schizophrenia. See, e.g., Compl. ¶ 6; Pl.'s Mem. of Law in Supp. of Mot. for Summ. J. at 1 (stating that "[t]he thrust of the claim i[s] that the

---

1. Although Plaintiff alleged that he had been disabled since January 1, 1969 in his application for benefits, (R. 65.), in his Disability Reports, Plaintiff indicated an onset date of 1973. (R. 76, 80 & 86.)

schizophrenia was disabling prior to claimant's 22nd birthday"); R. 146–47 (alleging onset of Crohn's disease in 1982).

Plaintiff's claim was denied initially and upon reconsideration. (R. 14, 67–69 & 72–73.) On April 6, 1998, an Administrative Law Judge ("ALJ") held a hearing on the claim. (R. 39–63.) Plaintiff attended the hearing. (R. 41.) He was accompanied by his attorney and by his brother, Lawrence R. Ricci, M.D., who testified on his behalf. *Id.*

On June 23, 1998, the ALJ determined that Plaintiff did not have a medically-determinable impairment that began prior to his twenty-second birthday. (R. 14–20.) On March 2, 2000, the Appeals Council declined Plaintiff's request to review the ALJ's decision. (R. 2–3.) Thus, the ALJ's decision became the final decision of the Commissioner. Plaintiff commenced this civil action challenging the ALJ's decision on May 2, 2000, and the parties filed cross motions for summary judgment.[2] The undersigned referred the matter to the Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## II. *LEGAL STANDARD*

■ Judicial review of administrative decisions is limited. The court may not re-weigh the evidence. The court determines only whether the Commissioner's decision is supported by substantial evidence. *Monsour Med. Ctr. v. Heckler*, 806 F.2d

1185, 1190–91 (3d Cir.1986) (citations omitted). Findings of fact made by an ALJ must be accepted as conclusive, provided that they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla." *Monsour*, 806 F.2d at 1190–91. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir.1987). Substantial evidence is "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Federal Mar. Comm'n*, 383 U.S. 607, 620, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966); *Campbell v. Callahan*, 57 Soc. Sec. Rep. Ser. 198 (available at 1998 WL 388374, at *2) (D.N.J.1998). In reviewing the ALJ decision, the court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir.1981).

## III. *DISCUSSION*

■ At issue in this case is whether substantial evidence supports the Commissioner's final decision that Plaintiff was not disabled, as defined by the Act, before November 11, 1977, his twenty-second

---

**2.** Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A factual dispute is material only if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Whether a genuine issue of material fact is presented will be determined by asking if "a reasonable jury could return a verdict for the non-moving party." *Id.* In considering a motion for summary judgment, "[i]nferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992) (citation omitted).

birthday. 20 C.F.R. 404.350(a).[3] The Commissioner contends that summary judgment should be granted in his favor because substantial evidence supports the ALJ's decision. Plaintiff contends that the ALJ erred in rejecting the testimony of several of Plaintiff's witnesses. Plaintiff also asserts that the ALJ erred by not consulting a medical advisor pursuant to Social Security Ruling 83–20, Titles II and XVI: Onset of Disability, 1983 WL 31249 (S.S.A.1983) ("SSR 83–20") to determine the onset date of Plaintiff's schizophrenia. (Pl.'s Mot. for Summ. J. ¶ 2(g).) In her Report and Recommendation dated March 15, 2001, the Magistrate Judge recommended that the matter be remanded so that the ALJ could employ a medical expert.[4]

Upon reviewing the record, the court finds that the Commissioner's decision that Plaintiff was not under a disability as defined in the Act by his twenty-second birthday is supported by substantial evidence. Further, as the medical evidence is not ambiguous, SSR 83–20 does not mandate a remand.

To receive disability insurance benefits, a claimant must show that he or she is unable to:

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.... [The impairment must be so severe that the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. §§ 423(d)(1)(A) & (d)(2)(A); 20 C.F.R. § 404.1505(a).

An ALJ considering a claim for disability insurance benefits undertakes the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520. Under Step One, if the claimant is working and the work constitutes substantial gainful activity, the ALJ must find that the claimant is not disabled regardless of medical condition, age, education or work experience. 20 C.F.R. § 404.1520(b). Under Step Two, the ALJ determines whether the claimant has a severe impairment which significantly limits his or her physical or mental ability to do basic work activity. *Id.* § 404.1520(c). Under Step Three, the ALJ must deter-

---

**3.** A claimant is entitled to child's benefits on the earnings record of an insured person who is entitled to benefits or who has died if he: (1) is the child of the insured; (2) is dependent on the insured; (3) has applied for benefits; (4) is unmarried; and (5) is under the age of 18 or has a disability that began before he became 22 years old. 20 C.F.R. § 404.350(a).

**4.** The court may accept, reject, or modify, in whole or in part, the magistrate's findings or recommendations. 28 U.S.C. § 636(b)(1)(C). To accept a report and recommendation to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record. *See* Rule 72, Fed.R.Civ.P., Notes of Advisory Committee on Rules (citing *Campbell v. Unit-*

*ed States Dist. Ct.,* 501 F.2d 196, 206 (9th Cir.1974), *cert. denied,* 419 U.S. 879, 95 S.Ct. 143, 42 L.Ed.2d 119 (1974)). Nonetheless, when a district court accepts a magistrate's report, "that is a judicial act, and represents the district court's considered judgment." *Henderson v. Carlson,* 812 F.2d 874, 878 (3d Cir.1987) (citation omitted). Thus, "[t]he authority—and the responsibility—to make an informed, final determination ... remains with the judge." *Id.* (citing *Mathews v. Weber,* 423 U.S. 261, 271, 96 S.Ct. 549, 46 L.Ed.2d 483 (1976)). Thus, "the better practice is for the district judge to afford some level of review to dispositive legal issues raised by the report" before adopting it as the court's decision. *Id.*

mine whether the claimant's impairment meets or equals the criteria for a listed impairment as set forth in 20 C.F.R. pt. 404, subpt. 4, Appendix 1. *Id.* § 404.1520(d). Under Step Four, if the ALJ finds that the claimant retains the residual functional capacity to perform past relevant work, the claimant will not be found to be disabled. *Id.* § 404.1520(e). Under Step Five, other factors, including the claimant's residual functional capacity, age, education and past work experience must be considered to determine if the claimant can perform other work in the national economy. *Id.* § 404.1520(f).

Plaintiff's claim was denied at Step Two because the ALJ concluded that Plaintiff was not disabled, as defined by the Act, before his twenty-second birthday. (R. 19–20.)

■ In order to receive Disabled Child's Benefits, Plaintiff must not only prove the existence of a disabling medical impairment, but must also establish that his impairment was of disabling severity prior to the expiration of his insured status. *See, e.g., Walton v. Halter*, 243 F.3d 703, 705 (3d Cir.2001) (citing 20 C.F.R. § 404.350); *Brown v. Chater*, 64 F.3d 669 (table) (available at 1995 WL 490275, at *2) (10th Cir. Aug. 16, 1995) (citations omitted); *U.S. v. Thomas*, No.94–6242, 1995 WL 722548, at *2 (E.D.Pa. Dec.4, 1995) (citations omitted); *Martin v. Shalala*, 927 F.Supp. 536, 540–41 (D.N.H.1995) (citing *Deblois v. Sec'y of Health and Human Servs.*, 686 F.2d 76, 79 (1st Cir.1982)). Thus, Plaintiff must prove that he became disabled on or before November 11, 1977.

"Disability is not determined by the presence of impairments, but by the effect the impairments have on the individual's ability to perform substantial gainful activity." *Thomas*, 1995 WL 722548, at *5 (citing *Moyer v. Shalala*, 828 F.Supp. 354, 358 (E.D.Pa.1993) & *Capoferri v. Harris*,

501 F.Supp. 32, 36 (E.D.Pa.1980) *aff'd* 649 F.2d 858 (3d Cir.1981)); *Brown*, 1995 WL 490275, at *2 (stating that "presence of a condition or ailment, without accompanying evidence that the condition results in some functional limitation on the ability to do basic work activity, is insufficient to establish a disability"); *Martin*, 927 F.Supp. at 541 (stating that "it is insufficient for the claimant to establish that the mental impairment had its roots during a particular time period") (citation omitted).

In the instant case, there are no medical records from the relevant period, 1973–1977, to substantiate Plaintiff's claim that he was disabled under the Act before 1977. *See* SSR 83–20, 1983 WL 31249, at *2 (stating that "[medical reports containing descriptions of examinations or treatment of the individual are basic to the determination of the onset of disability"). The record shows that Plaintiff has never been treated as an inpatient in a hospital for his disorder. (R. 77 & 122.) It appears that Plaintiff visited Jefferson Hospital twice on an outpatient basis, on July 3, 1988 and in September 1994. (R. 77, 89 & 108.) Plaintiff began seeing a social worker for anxiety in 1977. (R. 87 & 143.) In 1988, Plaintiff first saw a psychiatrist, Dr. Laufe, on one to three occasions. (R. 18, 85, 87 & 140.) It appears that Plaintiff was prescribed medication for his mental impairment in 1988. (R. 77, 122, 140 & 146.) The record shows that Plaintiff did not regularly visit a psychiatrist until 1994, the year he applied for Supplemental Security Income benefits. (R. 81, 85, 120 & 122.)

As the ALJ noted, only one piece of evidence shows that Plaintiff was treated prior to age twenty-two for any mental condition, namely "anxiety," and that is a statement from Patricia Sullivan, the clinical social worker who began seeing Plaintiff in 1977. (R. 87 & 143.) However, as the ALJ observed, because she is a clinical

social worker, Ms. Sullivan is not an acceptable medical source. *See* 20 C.F.R. § 404.1513 (listing acceptable medical sources as including: licensed physicians, psychologists, optometrists). Further, her retrospective, conclusory one-page letter opinion appears to have been based entirely on her memory.[5] Despite a request from the ALJ (R. 55–57), who held the record open for thirty days (R. 63), Plaintiff's attorney submitted neither supporting evidence for Sullivan's opinion, such as her progress notes or treatment plans, nor a statement as to why such supporting evidence could not be submitted. (R. 14.)

The record shows that only Dr. Anthony Lobianco, the family doctor, treated Plaintiff in the 1970's. (R. 88.) Dr. Lobianco did not testify on Plaintiff's behalf, but he is still alive. (R. 57.) Plaintiff's brother, Dr. Ricci, testified that Dr. Lobianco treated Plaintiff and prescribed a tranquilizer after Plaintiff's 1979 acute anxiety episode. (R. 47, 56–57 (referencing Dr. "Loganico") & 88.) However, despite the ALJ's requests, Plaintiff's counsel failed to provide either Dr. Lobianco's treatment records or a statement that such records could not be provided. (R. 14 & 57–59.)

■ In this case, the absence, or, reading the record liberally, scarcity, of medical evidence of a disabling condition before 1977 itself constitutes "substantial evidence" supporting the ALJ's decision. *Martin*, 927 F.Supp. at 541 (stating that "paucity of medical evidence" is substantial evidence supporting ALJ's decision); *Brown*, 1995 WL 490275, at *2 (recogniz-

ing that it is plaintiff's burden to prove existence of medically determinable impairment that results in functional limitation on ability to do basic work activity).

Further, school records contradict Plaintiff's assertion of the onset of disability in 1973. The ALJ found that "there is no definitive evidence based on a review of the claimant's high school and college transcripts to infer that the claimant was exhibiting inappropriate behavior during the relevant period due to a mental impairment." (R. 17.) The records show that Plaintiff maintained a steady average at St. Joseph's Preparatory School and graduated on June 9, 1973, ranking 96 out of 218 students, approximately in the middle of his class. (R. 165.) In the fall of 1973, Plaintiff entered St. Joseph's University where he completed three semesters before withdrawing on September 2, 1975. (R. 166.) At the time, his cumulative grade point average was 2.02, approximately a "C" average. *Id.*

Thus, the court concludes that substantial evidence supports the ALJ's decision.

■ Plaintiff, however, contends that the ALJ erred by not crediting testimony and reports from Drs. Ricci, Ross and Laufe. (Pl.'s Mem. of Law in Supp. of Mot. for Summ. J. at 2–3.)[6] Plaintiff also asserts that the ALJ should have consulted a medical advisor pursuant to SSR 83–20. (Pl.'s Mot. for Summ. J. ¶ 2(g).) The court finds that these assertions are without merit and will address them *seriatim*.[7]

---

5. The ALJ noted Dr. Ricci's statement in this regard that Ms. Sullivan never understood his brother's illness. (R. 16.)

6. Plaintiff further asserts that the ALJ erred by failing to consider Ms. Sullivan's opinion as to the onset of Plaintiff's mental condition. (Pl.'s Mem. of Law in Supp. of Mot. for Summ. J. at 3–4.) As stated *supra*, Sullivan is not an acceptable medical source and the ALJ

properly rejected her retrospective, unsubstantiated opinion.

7. Plaintiff's counsel also contends that the ALJ violated Plaintiff's due process rights by considering statements made in Plaintiff's and his mother's previous applications for benefits without giving Plaintiff notice or an opportunity to respond. (Pl.'s Mot. for Summ. J. ¶ 2(c); Pl.'s Mem. of Law in Supp. of Mot. for

## A. *Dr. Ricci*

■ Plaintiff's brother, Dr. Ricci, is a pediatrician, practicing in the area of child abuse evaluations. (R. 43.) From 1979 to 1988 he practiced emergency medicine. (R. 44.) Dr. Ricci testified that Plaintiff's school grades began to deteriorate during sophomore year in high school and that this coincided with a dramatic reduction in Plaintiff's social interactions. (R. 45 & 144.) Dr. Ricci testified that Plaintiff had his first "very clear" psychotic episode in 1979, when he displayed symptoms of anxiety. (R. 46–47 & 145.) It appears that Plaintiff had a "panic attack" and had to be brought home after being called to jury duty. (R. 46–47, 127 & 145.)

The ALJ determined that Dr. Ricci is not a valid medical source because he is not a psychologist or psychiatrist. (R. 16–17.) The ALJ also determined that Dr. Ricci's statements were of poor probative value, as they are based on memory of incidents that transpired over twenty years ago, and were not credible, as Dr. Ricci's testimony was both confused and contradictory. (R. 17.) For example, although Dr. Ricci stated that Plaintiff's grades "deteriorated dramatically" after his sophomore year in high school, (R.

144.), the record does not illustrate such a deterioration. *See* R. 165 (showing that in his second year of high school, Plaintiff received honors grades in 5 out of 6 courses, in his third year, Plaintiff received honors grades in 6 out of 6 courses, and in his final year, Plaintiff received honors grades in 3 out of 6 courses, graduating in the top half of his class). Rather than showing a dramatic drop in Plaintiff's overall average, transcripts from St. Joseph's Preparatory School reflect a steady grade average.

Likewise, Dr. Ricci testified that Plaintiff had a "psychotic episode" after being called to jury duty in 1979 during which he was hospitalized as an outpatient, medicated with Navane and sent to a psychiatrist. (R. 46–47 & 56; *see also* Rep. & Recomm. at 5.) However, in the report Dr. Ricci previously submitted to the ALJ, Dr. Ricci stated that Dr. Lobianco, the family doctor, treated Plaintiff following the 1979 episode, giving Plaintiff a note excusing him from jury duty because of "anxiety." (R. 145 & 170.) It also appears that Plaintiff was first treated as an outpatient at Jefferson Hospital in 1988, at which time he was treated with Navane, and referred to Dr. Laufe, a psychiatrist, whom he saw on one to three occasions.[8] (R. 77, 85, 87,

Summ. J. at 3.) The ALJ remarked on the fact that, when Plaintiff filed for SSI benefits in 1994, he did not apply for Disabled Child's Benefits, even though the application would have informed him that he must file for all benefits for which he was eligible. (R. 19.) Likewise, when Plaintiff's mother applied for retirement benefits in 1981, she did not state that she had a child whose disability began before age twenty-two. *Id.* at 18. Further, the ALJ noted that when the benefits Plaintiff received on his deceased father's Social Security number ceased in 1975 because Plaintiff was no longer a full-time student, he would have been notified that benefits may be payable if he was under a disability that began before age twenty-two. *Id.* Counsel argues that Plaintiff's statement that he was not ill until 1994 in Plaintiff's 1994 application for

SSI benefits should be excused, as Plaintiff's impaired mental condition prevented him from recognizing the onset date of his disability. (Pl.'s Reply Br. at unnumbered p.3.)

The court finds that it need not address Plaintiff's due process argument. For present purposes, the court will disregard statements made in previous applications for benefits, or the lack thereof, and will take no note of Plaintiff's statement that his disability began in 1994. The court will proceed to review whether substantial evidence in the record supports the ALJ's finding that prior to 1977, Plaintiff was not disabled as defined by the Act.

8. Plaintiff apparently received a diagnosis of probable schizophrenia in 1988. (R. 120 & 131.)

89, 122 & 146.)[9] Thus, the court finds that the ALJ properly rejected Dr. Ricci's testimony.

## B. Dr. Ross

■ The ALJ also rejected the opinion of Dr. Ross, a general psychiatrist. (R. 18 & 139.) Dr. Ross knew Plaintiff on a social basis from 1969 to 1973. (R. 139.) At that time, Dr. Ross was a medical school student and a house-mate of Plaintiff's brother, Dr. Ricci. *Id.* Dr. Ross submitted a letter dated September 6, 1995, opining that between 1969 and 1973, Plaintiff's schizophrenia began to assert itself. *Id.* The ALJ found that Dr. Ross was not an acceptable medical source as he was still in medical school when he knew Plaintiff, and was not yet a practicing, licensed psychiatrist. (R. 18.) Further, Dr. Ross never treated or examined Plaintiff, nor is his opinion based on objective medical records or treatment plans. The court finds that the ALJ properly rejected Dr. Ross's suppositious opinion.

## C. Dr. Laufe

■ The ALJ also properly rejected the opinion of Dr. Laufe, who saw Plaintiff for a psychiatric evaluation in July 1988. (R. 18, 85, 87 & 140.)[10] Dr. Laufe diagnosed Plaintiff as suffering from Pervasive Developmental Disorder since birth. (R. 18 & 140.)

The ALJ was correct in concluding that Dr. Laufe's opinion has no probative value as to when Plaintiff's disorder first became manifest or rose to the level of severe impairment. (R. 18.) If Dr. Laufe, as his letter states, only saw Plaintiff on July 19, 1988 for a psychiatric evaluation, he would

not qualify as Plaintiff's "treating" physician. *Thomas,* 1995 WL 722548 at *6 (stating that, after just one meeting, examining physician would not qualify as "treating" physician). At any rate, his conclusory one-page letter opinion is unsupported by treatment notes or records. It also contradicts other evidence in this case, including the medical records (and the lack thereof), testimony, and Plaintiff's school history. *See* 20 C.F.R. § 404.1527(d)(2) (stating that weight will be accorded treating physician's opinion if it is "well-supported by medically accepted clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence").

## D. Other Medical Evidence

The court notes that other medical evidence was submitted, and that the Magistrate Judge criticized the ALJ for not giving appropriate weight to the "uncontradicted reports" of Drs. Zitomer, Fischer, Certa and Laufe.[11] (Rep. & Recomm. at 13.) The ALJ found that each doctor examined Plaintiff well after 1977, and determined that their opinions lacked probative value as to when Plaintiff's disability first became manifest or rose to the level of severe impairment. (R. 17–18.) Although it is true that a retrospective opinion can, under certain circumstances, be used to prove a prior onset date, *Agnese v. Chater,* 934 F.Supp. 59, 63 (E.D.N.Y.1996), such circumstances are not present here.

Doctors Zitomer and Fischer treated Plaintiff in the 1990's for bowel and vision problems apparently secondary to Crohn's disease. (R. 81, 88, 116, 117, 121 & 138.)

---

**9.** The record reflects only one other episode, in 1994, that required outpatient treatment. (R. 146.)

**10.** The court notes that the record is unclear as to whether Dr. Laufe saw Plaintiff only once or three times.

**11.** The court has addressed, *supra,* why the ALJ properly rejected Dr. Laufe's conclusory, unsubstantiated one-page opinion. (R. 140.)

It is uncontroverted that these impairments did not arise until 1982, well after Plaintiff's insured status expired. (R. 82 & 147.) The ALJ properly rejected their opinions, which do not support Plaintiff's allegation of disabling schizophrenia before 1977.

Plaintiff began treatment with Dr. Certa in September 1994, the year that he applied for Supplemental Security Income. (R. 81 & 86.) Dr. Certa's report, dated February 5, 1995, states that Plaintiff suffers from schizophrenia having an onset date of September 1973. (R. 122.) As to the circumstances of the onset of the disease, Certa states that Plaintiff "had just broken up with [his] girl friend." *Id.*

 Dr. Certa's conclusory statement that Plaintiff's schizophrenia had an "onset" date of September 1973 is insufficient to support a conclusion that Plaintiff was disabled under the Act at that time. Further, as the ALJ noted, Certa's speculative statement sheds no light on the extent of Plaintiff's impairment at the relevant time. As with the other medical opinions proffered by Plaintiff's witnesses, Dr. Certa's unsupported and unsubstantiated opinion is inconsistent with the medical evidence (and the lack thereof) and with the record as a whole. *See* 20 C.F.R. § 404.1527(d) (discussing factors applicable when deciding weight of medical opinion).[12]

### E. *SSR 83-20*

Finally, Plaintiff asserts that the ALJ should have consulted a medical advisor pursuant to SSR 83-20. However, because the medical evidence was not ambiguous in this case, the court finds that SSR 83-20 does not apply.

SSR 83-20 addresses situations in which an ALJ makes a finding that an individual is disabled as of a certain date, and the question arises whether the disability arose at an earlier time. *Perkins v. Chater,* 107 F.3d 1290, 1295 (7th Cir.1997); *Spellman v. Shalala,* 1 F.3d 357, 361 (5th Cir.1993); *Lichter v. Bowen,* 814 F.2d 430, 434 (7th Cir.1987). SSR 83-20 applies where the medical evidence is ambiguous. *Walton,* 243 F.3d at 709 (citations omitted); *Grebenick v. Chater,* 121 F.3d 1193, 1201 (8th Cir.1997) (citing *Reid v. Chater,* 71 F.3d 372, 374 (10th Cir.1995); SSR 83-20; and *DeLorme v. Sullivan,* 924 F.2d 841, 848 (9th Cir.1991)); *Bailey v. Chater,* 68 F.3d 75, 79 (4th Cir.1995).

The key parts to this rather lengthy ruling are as follows:

PURPOSE: To state the policy and describe the relevant evidence to be considered when establishing the onset date of disability under the provisions of titles II and XVI of the Social Security Act (the Act) and implementing regulations....

INTRODUCTION: In addition to determining that an individual is disabled, the decision maker must also establish the onset date of disability. In many

---

**12.** Other circuits have held, and the court agrees, that the claimant must be disabled continuously and without interruption beginning before his twenty-second birthday until the time he applied for Disabled Child's Benefits. *See, e.g., Suarez v. Sec'y of Health and Human Servs.,* 755 F.2d 1, 3 (1st Cir.1985), *cert. denied,* 474 U.S. 844, 106 S.Ct. 133, 88 L.Ed.2d 109 (1985), and *reh'g denied,* 474 U.S. 1097, 106 S.Ct. 872, 88 L.Ed.2d 911 (1986); *Reading v. Mathews,* 542 F.2d 993, 997 (7th Cir.1976); *Futernick v. Richardson,* 484 F.2d 647, 648 (6th Cir.1973); *Reyes v. Sec'y of Health, Educ. and Welfare,* 476 F.2d 910, 914 (D.C.Cir.1973). In this respect, Plaintiff's continuing studies from 1984 through 1988 at St. Joseph's University are relevant. It appears that, in addition to working part-time at his mother's store, Plaintiff was enrolled part-time at college during these years, where he maintained a 3.85 cumulative grade point average. (R. 166–68.)

claims the onset date is critical; it may affect the period for which the individual can be paid and may even be determinative of whether the

individual is entitled to or eligible for any benefits....

POLICY STATEMENT: The onset date of disability is the first day an individual is disabled as defined in the Act and the regulations.... A title II worker cannot be found disabled under the Act unless insured status is also met at a time when the evidence establishes the presence of a disabling condition(s)....

Plaintiff asserts that the ALJ was required by SSR 83–20 to consult a medical advisor. (Pl.'s Mot. for Summ. J. ¶ 2(g).)

However, the ALJ is "not obliged to call a medical advisor in every case where the onset of disability must be inferred." *Lawson v. Chater*, 74 F.3d 1249 (10th Cir. 1996) (table) (available at 1996 WL 21260, at *2) (citing *Bailey*, 68 F.3d at 79). "Only if the medical evidence is ambiguous must the ALJ consult a medical advisor." *Id.* (citing *Reid*, 71 F.3d at 374). Here, the medical evidence is not ambiguous.

▮ In the instant case, there is no direct medical evidence of record for the relevant period of 1973 to November 11, 1977, despite the ALJ's efforts to secure records from Dr. Lobianco (and his efforts to secure records from Ms. Sullivan, albeit she would not be an acceptable medical source under 20 C.F.R. § 404.1513). Apart from properly discredited retrospective opinions, which are neither consistent with each other nor with the other evidence of record, Plaintiff has presented no medical evidence that he was disabled prior to 1977. As stated *supra*, medical evidence is the primary element in ascertaining the onset date of a disability. SSR 83–20, 1983 WL 31249, at *2 (stating that "[m]edical reports containing descriptions of examinations or treatment of the individual are basic to the determination on the onset of disability").

Here, there is no substantial medical evidence to call into question the ALJ's determination. The court finds that the evidence in this case is not ambiguous and that the matter need not be remanded pursuant to SSR 83–20. To the contrary, the medical evidence—showing that Plaintiff received outpatient treatment at Jefferson Hospital in 1988 and 1994, was treated with Navane in 1988, may have intermittently seen a psychiatrist in 1988 and began regular visits with a psychiatrist in 1994—when considered along with Plaintiff's school experiences, support the ALJ's conclusion that Plaintiff was not disabled before the expiration of his insured status in 1977. *See* SSR 83–20, 1983 WL 31249, at *3 (stating that onset date "can never be inconsistent with the medical evidence of record").

Finally, the court "emphasize[s] that it is not the ALJ's duty to be the claimant's advocate. Rather, the duty is one of inquiry and factual development. The claimant continues to bear the ultimate burden of proving that he is disabled under the regulations." *Bush v. Apfel*, 67 Soc. Sec. Rep. Ser. 70, (available at 2000 WL 311027, at *4) (E.D.Pa. March 24, 2000) (citing *Henrie v. Dep't of Health & Human Servs.*, 13 F.3d 359, 361 (10th Cir.1993)); *Brown*, 1995 WL 490275, at *2 (stating that "ALJ had no additional duty to seek out evidence to corroborate plaintiff's unsupported assertions of disability").

In this case, the ALJ held the record open for thirty days to receive additional evidence pertaining to Plaintiff's medical condition. (R. 14 & 59.) The ALJ requested records from the clinical social worker who saw Plaintiff in 1977, and from the family doctor who was Plaintiff's treating physician in the 1970's. (R. 55–59, 62–

63.) However, Plaintiff submitted no additional evidence. (R. 14.) Having reviewed the entire record, the court concludes that the Commissioner's decision is supported by substantial evidence: Plaintiff simply failed to meet his burden of proving a disability within the meaning of the Act during the relevant period.[13]

## IV. CONCLUSION

Based upon the foregoing reasons, Plaintiff's motion for summary judgment will be denied and the Commissioner's motion for summary judgment will be granted.

An appropriate Order follows.

### ORDER

AND NOW, TO WIT, this 30th day of March, 2001, upon consideration of plaintiff Ronald D. Ricci's and defendant Kenneth S. Apfel, Commissioner of the Social Security Administration's cross-motions for summary judgment, and after careful review of the entire record and the Report and Recommendation of United States Magistrate Judge Carol Sandra Moore Wells, IT IS ORDERED that:

1. the Report and Recommendation is NOT ADOPTED;

2. plaintiff Ronald D. Ricci's motion for summary judgment is DENIED; and

3. defendant Kenneth S. Apfel, Commissioner of the Social Security Administration's motion for summary judgment is GRANTED. Judgment is entered in favor of defendant Kenneth S. Apfel, Commissioner of the Social Security Administration and against plaintiff Ronald D. Ricci.

**13.** The Magistrate Judge states that the ALJ's decision is not properly supported by a "required medical basis." (Rep. & Recomm. at 15.) The court infers that the Magistrate Judge suggests that because Plaintiff is presently disabled and receives SSI, he became disabled at some time in the past and that therefore the ALJ is under an obligation to infer, with medical support, when Plaintiff's disability arose. The case cited for that proposition is inapposite. In *Agnese*, the Commissioner did not offer any evidence contradicting, *inter alia*, a treating physician's retrospective diagnosis that was "predicated upon a medically accepted clinical diagnostic technique," and which, "when considered in light of the entire record" established the existence of a physical impairment prior to the expiration of the plaintiff's insured status. *Agnese*, 934 F.Supp. at 62

(citations and internal quotations omitted); *see also Walton*, 243 F.3d 703, at 709 (citing, *inter alia*, *Grebenick*, 121 F.3d at 1201 for proposition that "[i]f the medical evidence is ambiguous" SSR 83–20 requires ALJ to call on services of medical advisor).

The court further notes that, as to the date that Plaintiff began receiving SSI benefits, an SSI applicant is not eligible for the payment of benefits for any time before the month in which he files his SSI application, even if he may have been disabled prior to that month. *Thomas*, 1995 WL 722548, at *4 (citing 20 C.F.R. § 416.335). Accordingly, since Plaintiff's SSI benefits would not have started until November 1994, the date of his SSI application, it was not necessary for purposes of determining SSI eligibility for the ALJ to assess whether Plaintiff was disabled prior to that date. *Id.*